OLGA I. FÉLIX TAVERAS, recurrida, *v.* LAS HACIENDAS, S.E., TEN GENERAL CONTRACTORS, S.E. y GUIRIMAR CONSTRUCTION CORPORATION, peticionarias.

*Números:* CC-2004-1019 *Resueltos:* 19 de octubre de 2005
 CC-2004-1097

*Luz Ivette Rivera* y *Manuel A. Moreda*, abogados de la parte peticionaria; *Juan E. Náter Santana*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

En enero de 1998, Olga Irene Félix Taveras presentó una querella ante el Departamento de Asuntos del Consumidor (D.A.Co.) contra Las Haciendas, S.E. (Las Haciendas), Ten General Contractors, S.E. (Ten Contractors) y Guirimar Construction Corporation (Guirimar Construction). En la referida querella se solicitó una compensación por alegados vicios de construcción y angustias mentales, sufridos luego de la adquisición mediante compraventa de una propiedad a Las Haciendas y construida por Ten Construction en la Urbanización Villas de Cambalache I, en Río Grande.[1] La querellante alegó que Guirimar Construction, quien construyó las calles de dicha urbanización, se apartó de lo establecido en los planos de construcción inscritos en la Administración de Reglamentos y Permisos (A.R.Pe.), y aprobados por ésta, al desviar una de las calles de la urbanización. Argumentó que dicho acto causó que el solar donde ubica su casa quedara con especificaciones distintas a las que constaban en los planos

---

[1] La suma total solicitada fue de $75,875. Posteriormente, la querella fue enmendada a los fines de solicitar una compensación por el daño que la humedad y las filtraciones le ocasionaron a la ropa de la querellante, cuyo valor estimó en unos $3,000 adicionales

inscritos en A.R.Pe.; que, además, tuvo el efecto de disminuir el tamaño del solar, tanto en los patios traseros como en el cuarto master, y que ocasionó que la estructura quedara a una distancia menor de la permitida de la acera a su casa.(²)

La querellante, además, sostuvo que su propiedad adolecía de vicios de construcción, tales como filtraciones en el techo, una bañera descascarada, un botiquín descascarado, defectos en la terminación del piso de la marquesina, y un cambio del cascajo por "top soil" en los patios. Arguyó que dichos defectos fueron ocasionados por Ten Contractors. Así las cosas, el D.A.Co. señaló el caso para celebración de vista evidenciaria. Dichas vistas se iniciaron con el testimonio de la querellante y un agrimensor, quien testificó que las medidas del solar de la querellante no cumplían con los requisitos de patio que establece el Reglamento de Planificación de A.R.Pe. (Reglamento de A.R.Pe.).(³)

Posteriormente, la querellante compareció ante D.A.Co., mediante una moción, en la cual informó que su querella constaba de dos causas de acción. La primera, contra Las Haciendas y Guirimar Construction, por el incumplimiento con el Reglamento de A.R.Pe., al establecer una colindancia a una distancia menor que la permitida de la acera a la casa de la querellante, y la segunda, contra Ten Contractors y Las Haciendas, por defectos de construcción. En la referida moción informó, además, que dichos defectos de construcción habían sido corregidos por Ten Contractors, por lo cual la querellante desistía con perjuicio de la querella en contra de Ten Contractors.(⁴) De

---

(²) La querellante sostuvo que dicha desviación ocasionó una pérdida del 40% del valor real de la propiedad.

(³) Surge del expediente que alrededor de la misma fecha en que se presentó la querella ante Departamento de Asuntos del Consumidor (D.A.Co.), la querellante también presentó una querella ante la Administración de Reglamentos y Permisos (A.R.Pe.) por las alegadas violaciones al reglamento de esta agencia. La referida agencia realizó una investigación sobre el asunto, luego del cual orientó a la querellante a seguir su reclamación contra el contratista de la obra y *procedió a archivar la querella* el 4 de marzo de 1998.

(⁴) La querellante y Ten General Contractors, S.E. (Ten Contractors) suscribieron un acuerdo transaccional en el que la primera desistía con perjuicio de toda

esta forma, sólo quedó ante la consideración del organismo administrativo los alegados incumplimientos de Las Haciendas y Guirimar Construction con el Reglamento de A.R.Pe.

D.A.Co. continuó la celebración de las vistas, en las cuales la querellante culminó su presentación de la prueba. Llegado el turno de presentación de la prueba de las querelladas, Guirimar Construction presentó una moción de insuficiencia de la prueba al amparo de la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III.([5]) La referida moción no fue resuelta por D.A.Co. En vista de ello, Guirimar Construction presentó una nueva moción de desestimación. En la segunda moción, argumentó que, por ser el asunto de la colindancia y de las alegadas violaciones a los planos de la exclusiva jurisdicción de A.R.Pe., D.A.Co. carecía de jurisdicción para atender el asunto.

D.A.Co. acogió la moción de desestimación presentada por la querellada y emitió una resolución, ordenando el cierre y archivo de la querella. En la resolución, exhortó a Félix Taveras a acudir a A.R.Pe. para que dicho organismo interpretara, conforme a su reglamento, las alegadas violaciones a las colindancias del solar.

Inconforme, Félix Taveras presentó una moción de reconsideración ante la agencia, en la que argumentó que debido a que se trataba de una reclamación donde se encontraba un consumidor involucrado con interés en que su caso fuese resuelto ante D.A.Co., tanto la Ley Núm. 5 de 23 de abril de 1973 (3 L.P.R.A. sec. 341 *et seq.*) como la Ley Núm. 130 de 13 de junio de 1967 (17 L.P.R.A. sec. 501 *et seq.*), le concedían jurisdicción a este departamento bajo la doctrina de jurisdicción primaria. Acogiendo los referidos planteamientos, D.A.Co. emitió una resolución, declarando "con lugar" la moción de reconsideración presentada por la

---

ulterior reclamación contra la segunda con motivo de la adquisición de la unidad de vivienda en la Urb. Villas de Cambalache I.

([5]) Es menester enfatizar que la referida regla establece que, en caso de que la moción sea declarada "sin lugar", *el demandado no renuncia a su derecho de ofrecer prueba.*

querellante y dejando sin efecto la resolución previamente emitida, en la que se ordenaba el cierre y archivo de la querella.

Inconforme con esta nueva determinación, el 16 de octubre de 2001 Las Haciendas acudió ante el Tribunal de Apelaciones, mediante un *recurso de "mandamus"*, solicitando que se ordenara al juez administrativo de D.A.Co. a que tomase en consideración los planteamientos hechos ante ese departamento sobre la alegada falta de jurisdicción del foro administrativo, y que se le ordenara a dicho funcionario archivar la querella presentada por Félix Taveras.

El tribunal apelativo intermedio *denegó* el recurso de *mandamus* solicitado por Las Haciendas. Señaló en la resolución que a esos efectos emitiera que el remedio solicitado *no era el adecuado y que no le correspondía entrar, en ese momento, en los méritos de las controversias ni pasar juicio sobre la procedencia de alguna solicitud al foro administrativo sobre la desestimación del caso.*

Las Haciendas solicitó la reconsideración de la determinación anterior. El 6 de noviembre de 2001, el foro apelativo intermedio, mediante resolución, se negó a reconsiderar su decisión. *Ello no obstante*, en esta resolución expresó que no podía perderse de vista que el único asunto que permitía la clara jurisdicción de D.A.Co. —los alegados defectos de construcción— había sido desistido el 26 de octubre de 2001 y que lo relacionado a los reclamos sobre cabida, distancias y "plot plans" aparentaba estar bajo investigación ante A.R.Pe., "que sin lugar a dudas era la agencia con jurisdicción para ese asunto".(6) A continuación, el foro apelativo intermedio señaló que, *estando pendiente todo asunto ante el foro administrativo* (refiriéndose a D.A.Co.), por haberse dejado sin efecto la desestimación de la querella, lo prudente era que *luego de plasmarse la*

---

(6) Evidentemente, el foro apelativo no se percató que la querella ante A.R.Pe. había sido archivada desde el 4 de marzo de 1998.

*decisión final* la parte afectada por dicha decisión final acudiese oportunamente en revisión.

El caso siguió su curso administrativo. Luego de varios incidentes y trámites procesales, Las Haciendas y Guirimar Construction presentaron ante D.A.Co. una nueva moción de desestimación. En ésta alegaron que, en virtud de la resolución del foro apelativo intermedio de 6 de noviembre de 2001, el asunto relacionado con la alegada violación del Reglamento de A.R.Pe. era de la exclusiva jurisdicción de ese organismo, y ya que éste era el único asunto pendiente aún ante D.A.Co., dicho organismo administrativo carecía de jurisdicción.

D.A.Co. emitió una resolución interlocutoria, declarando "sin lugar" la moción de desestimación. Señaló que mediante ésta se reincorporaba a Ten Contractors a los procedimientos a solicitud de la querellante, ya que los defectos de la propiedad habían vuelto a surgir. De esta determinación, Las Haciendas, Guirimar Construction y Ten Contractors solicitaron la reconsideración, a lo cual se opuso la querellante, Félix Taveras.[7]

Finalmente, el 4 de mayo de 2004, D.A.Co. emitió una resolución sumaria, en la que resolvió, acogiendo los planteamientos esbozados en la moción de reconsideración presentada por las querelladas, que la agencia con jurisdicción en cuanto a las reclamaciones contra Las Haciendas y Guirimar Construction era A.R.Pe. En cuanto a Ten Contractors, resolvió que en vista de que surgía del expediente administrativo que la querellante había desistido con perjuicio de su querella, este hecho impedía atender nuevamente dichos reclamos. En vista de ello, *D.A.Co. ordenó el cierre y archivo de la querella contra todas las querelladas.*[8]

---

[7] En particular, Ten Contractors alegó que, en virtud del acuerdo transaccional suscrito por ésta y la querellante, esta última se encontraba impedida de instar una nueva reclamación.

[8] Vale la pena *enfatizar* que, al momento de emitir esta última determinación, las querelladas *no* habían presentado su prueba para refutar la presentada por la querellante. Ello por razón de que, luego de culminada la presentación de la prueba

Inconforme con esta determinación, la querellante acudió, vía recurso de revisión administrativa, ante el Tribunal de Apelaciones. En el referido recurso, alegó, en síntesis y en lo pertinente, que era errónea la determinación de la agencia, ya que D.A.Co. sí tenía jurisdicción sobre la querella presentada *porque ésta trataba de una práctica indeseable en el negocio de la construcción.* Alegó, además, que ya que los vicios de construcción habían vuelto a surgir, no podía desestimarse la querella contra Ten Contractors.

El referido foro apelativo resolvió, en cuanto a la reclamación contra Ten Contractors, que el acuerdo de transacción firmado por las partes había dado por terminado su reclamación contra ésta en cuanto a los defectos de construcción y su respectiva indemnización en daños, razón por la cual confirmó a D.A.Co. en este aspecto. *Sin embargo*, en cuanto a las reclamaciones contra las otras dos entidades querelladas, el foro apelativo resolvió que según el Reglamento para Regular las Distintas Actividades que se Llevan a Cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico, Reglamento Núm. 2268 del Departamento de Asuntos del Consumidor de 16 de septiembre de 1977, este organismo tenía jurisdicción para atender querellas relacionadas a *prácticas indeseables*, como lo eran el alterar o modificar planos, especificaciones o permisos de construcción, o construcciones en forma incompleta o crasamente negligente, como había ocurrido en este caso. Señaló el referido foro judicial que era a D.A.Co. a quien correspondía indemnizar por los daños ocasionados como consecuencia de prácticas indeseables en el negocio de la construcción. Por consiguiente, el foro apelativo intermedio ordenó la celebración de una vista administrativa ante D.A.Co. para dilucidar la cuantía de los daños sufridos por la querellante a causa de la actuación negligente por parte de los querellados.

---

de Félix Taveras, D.A.Co. había procedido a desestimar la querella en virtud de los planteamientos de falta de jurisdicción que hiciera Guirimar Construction Corp.

Insatisfecha con el dictamen del foro apelativo intermedio, Las Haciendas acudió, mediante un recurso de *certiorari*, ante este Tribunal. Guirimar Construction presentó, también, un recurso de *certiorari*. En ambos se hacen los mismos señalamientos de error, a saber: primero, le imputan al foro apelativo haber errado al actuar de forma incompatible con su dictamen previo del 6 de noviembre de 2001, en el que se expresaba que el organismo administrativo con jurisdicción sobre las alegadas violaciones a la cabida de la propiedad era A.R.Pe., lo cual establecía la ley del caso; segundo, que erró el foro apelativo intermedio al resolver que D.A.Co. tenía jurisdicción para atender la controversia, y tercero, al adjudicar la controversia en sus méritos a favor de Félix Taveras sin que se hubiese completado el desfile de prueba ante el foro administrativo y cuando lo que tenía ante su consideración era únicamente una revisión de una resolución desestimatoria y no una adjudicación en los méritos de la controversia, todo ello en violación del debido proceso de ley de las peticionarias.

Examinados ambos recursos y sus apéndices, los *expedimos y consolidamos.* Estando en condiciones de resolver los recursos presentados, procedemos a así hacerlo.

I

En primer lugar, discutimos y resolvemos los planteamientos hechos por las peticionarias Las Haciendas y Guirimar Construction, en cuanto a que la resolución del Tribunal de Apelaciones de 6 de noviembre de 2001 constituía la "ley del caso".(⁹) Las peticionarias entienden que una

---

(⁹) A continuación se transcribe, en esencia, la resolución emitida por el foro apelativo el 6 de noviembre de 2001:

"No puede perderse de vista que el único asunto que permite la clara jurisdicción de [D.A.Co.], esto es, los alegados defectos de construcción fue desistido el 26 de octubre de 2001 y que lo relacionado a los reclamos sobre cabida, distancias y plot plans aparenta estar bajo investigación ante la Administración de Reglamentos y Permisos, que sin lugar a dudas es la agencia con jurisdicción para ese asunto.

"Sin embargo, la resolución en reconsideración emitida [por D.A.Co.] y notificada a todas las partes el 9 de julio de 2001 *aparenta haber revivido todos los asuntos*

expresión accesoria del foro apelativo dentro de esta resolución,([10]) sobre la alegada jurisdicción de A.R.Pe., impedía que otro panel de ese foro apelativo realizara una determinación contraria. *No* les asiste la razón.

■ De entrada, es menester señalar que en reiteradas ocasiones este Tribunal ha expresado que sólo los derechos y obligaciones *adjudicados* en el ámbito judicial, *mediante dictamen firme*, pueden constituir la ley del caso. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 D.P.R. 599, 606–607 (2000); *In re Tormos Blandino*, 135 D.P.R. 573, 578 (1994); *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448 (1989). Dicho de otra forma, de ordinario los planteamientos que han sido objeto de adjudicación por el foro de instancia o por este Tribunal no pueden reexaminarse. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, ante, pág. 607.

■ Así como no puede invocarse la doctrina de cosa juzgada cuando no existe una decisión final *en los méritos* que sirva de base a dicha defensa,([11]) tampoco aplica en tales instancias la doctrina de la "ley del caso". En específico, las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones *consideradas y decididas*. Dichas determinaciones, como regla general, obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve ante su consideración. *Srio. del Trabajo v. Tribunal Superior*, 95 D.P.R. 136 (1967).

---

*del caso.* Nótese que esta última determinación no fue recurrida por la peticionaria Las Haciendas S.E.

"Así las cosas y *estando pendiente todo el asunto ante el foro administrativo,* lo prudente es que se plasme la decisión final escrita para que de entenderlo prudente alguna parte afectada recurra oportunamente ante nos.

"Reiteramos que nuestra actuación en este momento sería a destiempo y por ello no podemos acceder a la reconsideración parcial solicitada." (Énfasis suplido.) Apéndice de la Petición de *certiorari* de 23 de noviembre de 2004, págs. 45–46.

([10]) Resolución en la que se denegó la revisión de la resolución que a su vez denegaba la expedición del *mandamus* solicitado por Las Haciendas.

([11]) Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343; *García v. Gobierno de la Capital*, 72 D.P.R. 138, 150–151 (1951); Restatement, Judgments Secs. 41, 45 (1942), citado en *Developments in the Law—Res Judicata*, 65 (Núm. 5) Harv. L. Rev. 818, 835 *et seq.* (1952).

*Ello no obstante* —y en situaciones excepcionales— si el caso, mediante los mecanismos apropiados, vuelve ante la consideración del tribunal apelativo y éste entiende que sus determinaciones previas son erróneas y pueden causar grave injusticia, dicho foro puede aplicar una norma de derecho distinta y resolver así de forma justa. *Piazza v. Isla del Río, Inc.*, 158 D.P.R. 440 (2003). Véanse, además: *Pueblo v. Lebrón Lebrón*, 121 D.P.R. 154, 159 (1998); *Don Quixote Hotel v. Tribunal Superior*, 100 D.P.R. 19, 29–30 (1971).

En el presente caso, las expresiones del tribunal apelativo antes transcritas se dieron dentro de una resolución donde el asunto medular era la denegatoria a una solicitud de reconsideración de una resolución anterior. Según se deduce del expediente del presente recurso, la resolución de la cual se solicitaba la reconsideración denegaba, a su vez, la expedición de un auto de *mandamus* donde se solicitaba que se obligase al juez administrativo de D.A.Co. a atender los planteamientos hechos por las querelladas sobre la alegada falta de jurisdicción de dicha agencia para atender la controversia ante sí. En esta primera resolución —que denegó la expedición del recurso de *mandamus*— *no* se hizo determinación alguna en cuanto al asunto de qué organismo administrativo tenía jurisdicción para atender el asunto, si D.A.Co. o A.R.Pe. En la Resolución de 6 de noviembre de 2001 —la cual las recurrentes sostienen es la ley del caso— *tampoco* se hizo una adjudicación en los méritos sobre el asunto de jurisdicción. Es más, en *ambas* resoluciones el foro apelativo se negó a intervenir en esa etapa de los procedimientos por considerarla a destiempo.

Es por ello que no podemos suscribir la posición de las peticionarias a los efectos de que las meras expresiones que hiciera el foro apelativo en la resolución denegatoria de la moción de reconsideración presentada por las querelladas constituyeran la ley del caso. Dichas expresiones no alcanzan el grado de dictámenes finales. En esa resolución nada se adjudicó ni se resolvió la controversia en cuanto al

asunto de la jurisdicción, ya que ese no era el asunto que tenía ante sí el foro apelativo.

En consecuencia, el foro apelativo intermedio no estaba impedido de hacer la determinación que hizo en la resolución aquí recurrida, indicando que D.A.Co. sí tenía jurisdicción sobre el asunto de las alegadas prácticas indeseables en el negocio de la construcción.

## II

Las peticionarias cuestionan si D.A.Co. es el organismo administrativo con jurisdicción sobre el asunto. *Contestamos dicha interrogante en la afirmativa. Veamos.*

■ La Ley Núm. 130, ante, conocida como la Ley de la Oficina del Oficial de Construcción adscrita a la Administración de Renovación Urbana y Vivienda, le confirió poder a este funcionario para, entre otras, investigar y adjudicar las querellas sobre *prácticas indeseables* en el negocio de la construcción y conceder los remedios pertinentes conforme a derecho. Art. 4 de la Ley Núm. 130, ante, 17 L.P.R.A. sec. 504. Con la creación de D.A.Co. y su ley orgánica, Ley Núm. 5, ante, se transfirieron a esta agencia todos los poderes y deberes de la Oficina del Oficial de la Construcción. Véase *Quiñones v. San Rafael Estates, S.E.*, 143 D.P.R. 756 (1997).

■ Las prácticas indeseables en el negocio de la construcción se encuentran enumeradas en el Art. 9 de la Ley Núm. 130, ante, 17 L.P.R.A. sec. 509. En lo pertinente, los incisos (c) y (d) de la referida disposición estatutaria establecen que incurrirá en práctica indeseable en el negocio de la construcción todo urbanizador o constructor[12] que:

(c) *Altere o modifique los planos* de una vivienda o modelo *aprobado* por la Junta de Planificación *y/o la Administración*

---

[12] El Art. 2 de la Ley Núm. 130 de 13 de junio de 1967 (17 L.P.R.A. sec. 502(d)), en lo pertinente, define "urbanizador o constructor" como "toda persona que se dedi

*de Reglamentos y Permisos*, disponiéndose que toda solicitud de enmiend[a] a los planos o especificaciones del proyecto radicada ante la Junta de Planificación y/o la Administración de Reglamentos y Permisos ....

(d) Certifique o haga certificar falsamente que una vivienda o grupo de viviendas, urbanización o proyecto multifamiliar ha sido construido con arreglo a los planos aprobados por la Junta de Planificación o la Administración de Reglamentos y Permisos .... (Énfasis suplido.)

■ La Ley Núm. 160 de 9 de junio de 1976 fue aprobada para enmendar algunos artículos de la Ley Núm. 130 antes citada.([13]) En la exposición de motivos de la referida pieza legislativa se expresa que toda vez que las facultades del Oficial de Construcción *han sido transferidas* al Secretario de D.A.Co., será necesaria la adjudicación de las querellas sobre prácticas indeseables en el negocio de la construcción presentadas por los consumidores puertorriqueños según se dispone en la Ley Núm. 5, ante, ley habilitadora de D.A.Co., para los demás procedimientos adjudicativos llevados a cabo ante dicho organismo.

■ A su vez, el Reglamento Núm. 2268 aprobado por D.A.Co., en la Sec. 2(8), *faculta al Secretario de dicha agencia a investigar y adjudicar las querellas presentadas sobre prácticas indeseables en el negocio de la construcción.* El referido reglamento establece, además, cuáles serán las referidas prácticas indeseables. Entre ellas se incluyen, en los incisos (c) y (d) las mismas circunstancias expresadas en los incisos (c) y (d) de la Ley Núm. 130, ante. Dicho de otra forma, constituirá una práctica indeseable —*según el*

---

que al negocio de la construcción en calidad de empresario o principal responsable de la promoción, diseño, venta, construcción de obras de urbanización para vivienda, o de la construcción en grande escala de viviendas, bien del tipo individual o multipisos. ... Incluye a quien asuma la responsabilidad total para la presentación ante la Junta de Planificación de consultas de ubicación y uso de terrenos, y ante [A.R.Pe.] del desarrollo preliminar, planos preliminares y finales para la construcción de las obras en un predio extenso de terreno que habrá de lotificarse para la construcción de viviendas ... o que comisione a otros para realizar cualesquiera de tales actividades".

([13]) Dichas enmiendas no alteraron los incisos sobre prácticas indeseables antes transcritos.

*propio Reglamento de D.A.Co.—* cualquier alteración o modificación a los planos de una vivienda que hayan sido aprobados por A.R.Pᴇ. y que no esté autorizada por el comprador. También constituirá práctica indeseable el que un urbanizador o constructor certifique falsamente que una vivienda ha sido construida de acuerdo con los planos aprobados por A.R.Pᴇ.

Por su parte, la Sec. 20 del referido Reglamento de D.A.Co., ante, dispone que toda querella a que tenga derecho un consumidor podrá ser presentada en el Departamento, o su sucesor, y que en dicha querella el optante o comprador podrá alegar que el urbanizador o constructor ha incurrido en una práctica indeseable de la construcción en violación de alguna de las disposiciones de la Ley Núm. 5, ante, o del Reglamento de D.A.Co. *De modo que el Reglamento dirige al consumidor a presentar su querella, por violación a éste, y en específico, por prácticas indeseables, ante* D.A.Co.

Como parte de los amplios poderes que tiene D.A.Co. para proteger los derechos de los consumidores se encuentra, en específico, la protección de éstos contra *prácticas indeseables de la construcción* por parte de los constructores y urbanizadores, y la concesión de los remedios que en derecho procedan. *Quiñones v. San Rafael Estates, S.E.,* ante. Al esta agencia ejercer esa facultad, adelanta los intereses de su ley habilitadora, que se sintetiza en el deseo de proteger a los consumidores de prácticas indeseables por parte de los constructores y de proveer un remedio rápido, efectivo y sencillo, sin tener que recurrir a los tribunales y sufragar los costos de un litigio contra una parte que, como regla general, tiene más recursos. Íd.

En consecuencia, resolvemos que, en virtud de las leyes antes citadas y del Reglamento Núm. 2268 de D.A.Co., ante, *esta agencia tiene, en efecto, jurisdicción para atender, adjudicar y otorgar los remedios que en dere-*

*cho procedan en virtud de las querellas presentadas por los consumidores en las que se aleguen prácticas indeseables realizadas en el negocio de la construcción, tal y como lo hizo la querellante en el presente caso.* Las alegaciones de Félix Taveras contra Las Haciendas, como vendedora de la vivienda en cuestión, y contra Guirimar Construction, como constructora de las calles de la urbanización, fueron que, al esta última apartarse de los planos aprobados e inscritos en A.R.Pe., la cabida real de su vivienda es distinta de la que reflejan los referidos planos, constituyendo esto una práctica indeseable en el negocio de la construcción.

█ En fin, el presente caso trata de una acción en *daños y perjuicios* de un consumidor, y es precisamente D.A.Co. la agencia cuyo propósito principal es vindicar e implementar los derechos de los consumidores,([14]) a través del procedimiento de adjudicación administrativa y la concesión de los remedios apropiados.([15]) Por consiguiente, *es correcta* la determinación del tribunal apelativo a estos efectos.

### III

Por último, las recurrentes señalan como error que el Tribunal de Apelaciones hubiese hecho una adjudicación del caso en sus méritos, devolviendo el caso al foro administrativo para la imposición de daños, cuando lo único que tenía ante sí dicho foro era la controversia en cuanto a qué agencia tenía jurisdicción sobre el asunto y cuando al mo-

---

([14]) Art. 3 de la Ley Núm. 5 de 23 de abril de 1973 (3 L.P.R.A. sec. 341b).

([15]) Aun cuando A.R.Pe. ciertamente tiene jurisdicción para atender las controversias surgidas a raíz de una violación, su ley orgánica, Ley Núm. 76 de 1 de julio de 1975 (23 L.P.R.A. sec. 71 *et seq.*), o su Reglamento, *dicha agencia no puede conceder compensación por daños a la persona afectada por dichas violaciones.* El Administrador de A.R.Pe. o su representante autorizado podrá imponer *multas administrativas* a personas naturales o jurídicas que incumplan o violen cualquier restricción, reglamento u orden adoptada en virtud de las facultades que le confieren la Ley Núm. 76, ante, u otras leyes, o que violen cualquier disposición de la citada Ley Núm. 76.

mento en que se emitió la resolución del tribunal apelativo, las querelladas aun no habían presentado su prueba ante D.A.Co., violándose de este modo su derecho a un debido proceso de ley. *Les asiste la razón.* Veamos.

 La Sec. 3.1 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2151, establece, en lo pertinente, que cuando por disposición de una ley, regla o reglamento una agencia deba adjudicar formalmente una controversia, los procedimientos deberán salvaguardar los derechos siguientes:

(A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.
(B) *Derecho a presentar evidencia.*
(C) Derecho a una adjudicación imparcial.
(D) Derecho a que la decisión sea basada en el expediente.
(Énfasis suplido.)

 Una parte en un procedimiento formal de adjudicación a nivel administrativo puede presentar evidencia tanto oral como documental en apoyo de sus contenciones. Al ser la audiencia concedida por las agencias de carácter evidenciarlo, se sigue la trayectoria judicial de que cada parte presente su caso a través de testimonio oral, evidencia documental y argumentos legales. *El derecho a la audiencia incluye el de presentar evidencia.* Un procedimiento que no permite la presentación de prueba para demostrar la falta de responsabilidad *no* cumple con los requisitos del debido procedimiento de ley y constituye una mera formalidad. D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed. rev., Colombia, Ed. Forum, 2001, citando a *Morgan v. United States*, 304 U.S. 1 (1938), y a *Ortiz Cruz v. Junta Hípica*, 101 D.P.R. 791 (1973).

En el presente caso, el Tribunal de Apelaciones devolvió el caso únicamente para la imposición de daños por la negligencia de las querelladas. Al así actuar, éste hizo una adjudicación del caso en sus méritos, sin tomar en conside-

ración la etapa de los procedimientos ante el foro administrativo, ya que ante la agencia administrativa no se había comenzado el desfile de la prueba de las querelladas. *Erró al así hacerlo.*

D.A.Co. desestimó la querella a base de dos fundamentos: la transacción del caso que ponía fin al pleito entre Ten Contractors y la querellante, y el hecho de que el remanente del pleito era de la jurisdicción de A.R.Pe. y no de D.A.Co. Como vemos, D.A.Co. no hizo determinación alguna sobre la alegada negligencia de las querelladas. Además, al momento de emitir esta determinación, únicamente la querellante había presentado su prueba. En vista de que la querella fue archivada, en virtud de los planteamientos hechos por Las Haciendas y Guirimar Construction sobre la falta de jurisdicción de D.A.Co., éstas aún no habían presentado su prueba.

En consecuencia, resolvemos que *erró* el foro apelativo intermedio al ordenar la devolución del caso únicamente para la imposición de daños. Lo *procesalmente correcto* es devolver el caso a D.A.Co. para que, luego de que las querelladas hayan desfilado su prueba, *dicho foro administrativo haga una determinación del caso en los méritos.*

*Se dictará Sentencia de conformidad.*

La Jueza Asociada Señora Fiol Matta no intervino.