Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Eduardo Medina Sánchez, José A. Medina y Otro<br><br>      Peticionarios<br><br>            v.<br><br>Swiss Chalet, Inc.<br><br>      Recurrida | Certiorari<br><br>2010 TSPR 21<br><br>178 DPR ____ |

Número del Caso: CC-2008-1066

Fecha:    19 de febrero de 2010

Tribunal de Apelaciones:

        Región Judicial de Aguadilla Panel III

Juez Ponente:

        Hon. Nestor Aponte Hernández

Abogado de la Parte Peticionaria:

        Lcdo. Samuel Torres Cortes

Abogado de la Parte Recurrida

        Lcdo. Rafael Mayoral Morales

Materia: Incumplimiento de Contrato, Vicios de Cons    trucción y
        Anuncio Engañoso

Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correccione    s del proceso de compilación y publicación oficial de las decisio    nes del Tribunal. Su distribución electrónica se hace como    un servicio público a la comunidad. ?
?

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eduardo Medina Sánchez,
José A. Medina y Otro

    Peticionarios

       v.                      CC-2008-1066      Certiorari

Swiss Chalet, Inc.

    Recurrida

Opinión del Tribunal emitida por el Juez Presidente señor HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 19 de febrero de 2010.

Nos corresponde determinar si el Departamento de Asuntos del Consumidor (DACO) tiene jurisdicción, para ordenar a una desarrolladora indemnizar al comprador de un apartamento por la disminución en la cabida del mismo, al amparo de la Ley Núm. 130 de 13 de junio de 1967, 17 L.P.R.A. sec. 502 *et seq*, conocida como la Ley de la Oficina del Oficial de Construcción, así como del Reglamento para Regular las Distintas Actividades que se Llevan a cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico, Reglamento Núm. 2268 del Departamento de Asuntos del Consumidor de 16 de septiembre de 1977 (Reglamento del Negocio de la Construcción).

Por entender que DACO posee dicha facultad, revocamos la sentencia recurrida.

## I.

Swiss Chalet, Inc. (Swiss Chalet) desarrolló el proyecto Gallery Plaza, ubicado en la Avenida de Diego, esquina Calle Loíza en el Condado. El folleto de promoción del proyecto indicaba que estaban a la venta dos tipos de apartamentos, el modelo "Skyline", con cabida aproximada de 1,458 pies cuadrados, y el modelo "Horizon", con cabida aproximada de 1,022 pies cuadrados.

El Sr. José A. Medina Mouriz firmó un contrato de opción de compraventa para adquirir la titularidad de un apartamento modelo Horizon, valorado en $462,900, y entregó $5,000 como parte del pronto pago. En dicho contrato constaba que el área aproximada del apartamento era 1,022 pies cuadrados. Posteriormente, el señor Medina Mouriz suscribió un contrato de compraventa y, en ese momento, le entregó a Swiss Chalet $10,000 adicionales. En el referido contrato de compraventa constaba la misma cabida aproximada que figuraba en el folleto y en el contrato de opción. Así las cosas, el señor Medina Mouriz comenzó a realizar las gestiones para obtener el financiamiento para pagar el balance del precio de venta. Como parte del proceso, su banco tasó el apartamento, el cual arrojó que tenía un área de 950 pies cuadrados, 72 pies cuadrados menos que el área aproximada indicada por Swiss Chalet en todo momento.

Al percatarse de esto, el señor Medina Mouriz le solicitó a Swiss Chalet una reducción en el precio de venta que fuera

proporcional a la reducción en la cabida del apartamento. No obstante, la desarrolladora se negó, por lo que el señor Medina Mouriz presentó una querella ante el DACO. Como remedio, solicitó que el precio de venta fuera ajustado para que reflejara la merma en la cabida. Pidió, además, una orden de cese y desista para impedir que Swiss Chalet cancelara el contrato de compraventa y vendiera el apartamento.

Al contestar la querella, Swiss Chalet adujo, en primer lugar, que el área indicada en el folleto y en los contratos firmados por el señor Medina Mouriz era aproximada, y que así se hizo constar expresamente, por lo que éste sabía que el área podría variar. En segundo lugar, alegó que la cabida que consta en dichos documentos es el área bruta, pues incluye las paredes y las columnas, que son elementos estructurales no transmisibles a tenor de la Ley de Condominios, Ley Núm. 103 de 5 de abril de 2003, 31 L.P.R.A. secs. 1291 *et seq*. Según explicó, el área neta que arrojó la tasación es el área bruta que constaba en el folleto y en los contratos, menos el espacio que ocupan los elementos estructurales. Indicó, además, que el área neta que sería transmitida a los compradores de los apartamentos consta en las escrituras que eventualmente se firmarían. Por último, alegó que el contrato de compraventa establece que el comprador podrá resolverlo si considera que el apartamento es sustancialmente distinto a lo especificado en el acuerdo firmado, y que tendrá derecho a que se le devuelvan los pagos que haya hecho como anticipo. De acuerdo a Swiss Chalet, la resolución del contrato de

compraventa es el único remedio que el señor Medina Mouriz tiene disponible.

Tras varios incidentes procesales, entre los que se encuentra la celebración de una vista en su fondo y la emisión de una orden permanente de cese y desista para prohibirle a Swiss Chalet cancelar el contrato de compraventa y vender el apartamento a otra persona, DACO concluyó que dicha desarrolladora era responsable por haber incurrido en falsa representación sobre la unidad vendida, en contravención a la Ley Núm. 130, *supra*, y al Reglamento del Negocio de la Construcción, *supra*. Determinó, además, que había incurrido en una práctica engañosa en violación al Reglamento de Prácticas y Anuncios Engañosos, Reglamento Núm. 7231 del Departamento de Asuntos del Consumidor de 13 de octubre de 2006. Por ende, encontró que el señor Medina Mouriz sufrió daños como consecuencia de la falsa representación hecha por la referida desarrolladora sobre la cabida de los apartamentos que vendía y ordenó a Swiss Chalet pagar al señor Medina Mouriz $32,612 como compensación.

Inconforme, Swiss Chalet acudió al Tribunal de Apelaciones. Adujo que DACO erró al determinar que había incurrido en una práctica engañosa y al ordenarle vender el apartamento, según estimó, a descuento. Según se desprende de la sentencia emitida, el foro apelativo intermedio consideró que DACO carecía de jurisdicción para atender la querella al amparo del Reglamento de Prácticas y Anuncios Engañosos, *supra*, pues la disputa era de carácter contractual y no entre un comerciante y un consumidor, según lo requiere dicho

reglamento. Por ello, revocó la resolución administrativa y desestimó la querella del señor Medina Mouriz.

Ante tal determinación, el señor Medina Mouriz presentó un recurso de *certiorari* ante este Tribunal.[1] Alegó que el Tribunal de Apelaciones erró al determinar que DACO no tenía jurisdicción para resolver el caso pues, según expuso, la Ley Núm. 130, *supra*, y el Reglamento del Negocio de la Construcción, *supra*, facultan a la agencia para conceder compensaciones por daños y perjuicios a los compradores de viviendas por los defectos de construcción o por falsa representación sobre la unidad vendida.

Examinado el recurso, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II.

La Ley Núm. 130, *supra*, confirió poder al Oficial de Construcción para investigar y adjudicar las querellas sobre prácticas indeseables en el negocio de la construcción. Felix v. Las Haciendas, 165 D.P.R. 832, 845 (2005). Estas facultades, sin embargo, fueron transferidas, primero a la Administración de Servicios al Consumidor mediante la Ley

---

[1] Los hijos del señor Medina Mouriz, los Sres. Eduardo y José M. Medina Sánchez, también compraron apartamentos en Gallery Plaza. Éstos habían firmado contratos de opción y de compraventa en los que se indicaba que sus apartamentos tenían una cabida aproximada de 1,458 pies cuadrados cada uno. Luego de tasarlos, se percataron de que el área neta de vivienda era 1,337 pies cuadrados, 121 pies menos que lo indicado por Swiss Chalet. En vista de ello, también presentaron querellas ante DACO en contra de la referida desarrolladora. Éstas han seguido el mismo trámite procesal que la querella presentada por el señor Medina Mouriz. Además, los hermanos Medina Sánchez presentaron, junto a su padre, la petición de *certiorari* que nos ocupa. No obstante, estando pendiente el recurso ante nuestra consideración, desistieron del pleito en contra de Swiss Chalet.

Núm. 148 de 27 de junio de 1968, y luego a DACO, en virtud de la Ley Núm. 5 de 23 de abril de 1973, conocida como Ley Orgánica del Departamento de Asuntos del Consumidor, 3 L.P.R.A. secs. 341 *et seq*. Posteriormente, el trámite para adjudicar las querellas surgidas al amparo de la Ley Núm. 130, *supra*, se uniformó con el procedimiento adjudicativo establecido en la Ley Núm. 5, *supra*. Quiñones v. San Rafael Estates, S.E., 143 D.P.R. 756 (1997). El desarrollo legal de la Ley Núm. 130, *supra*, evidencia la existencia de una clara política pública a favor de los compradores de vivienda, a quienes la Exposición de Motivos del referido estatuto califica como los entes más débiles. Suárez Figueroa v. Sabanera Real, Inc., res. el 6 de mayo de 2008, 2008 T.S.P.R. 71. En vista de estos preceptos, hemos resuelto que DACO tiene jurisdicción para atender, adjudicar y otorgar los remedios que en derecho procedan en virtud de las querellas presentadas por los consumidores en contra de los desarrolladores de viviendas. Felix v. Las Haciendas, *supra*, pág. 847.

De otra parte, el Reglamento del Negocio de la Construcción, *supra*, fue promulgado por DACO al amparo de la Ley Núm. 5, *supra*, y de la Ley Núm. 130, *supra*, para implementar la política pública a favor de los compradores de vivienda y atender las querellas presentadas por éstos. Quiñones v. San Rafael Estates, S.E., *supra*, pág. 771. El Artículo 10(c)(6) de la Ley Núm. 130, *supra*, dispone que "el urbanizador o constructor de la unidad objeto del contrato [de compraventa] será responsable de los daños y perjuicios

que se causen al comprador por razón de defectos de construcción y por la falsa representación sobre la unidad vendida". Art. 10(c)(6) de la Ley 130, 17 L.P.R.A. sec. 510. Por su parte, el Reglamento del Negocio de la Construcción, *supra*, establece, específicamente, que por falsa representación se entiende construir una vivienda distinta a la que fue objeto de contrato, folleto de promoción, o modelo en exhibición. Sec. 14.13 del Reglamento del Negocio de la Construcción, *supra*.

Por último, el Artículo 10(h)(1) de la Ley Núm. 130, *supra,* y la Sección 15 del Reglamento del Negocio de la Construcción disponen que el comprador podrá resolver el contrato de compraventa cuando perciba que la unidad que se le está construyendo o haya de entregársele es sustancialmente distinta de la especificada en el contrato, y que tendrá derecho a la devolución de los pagos que haya dado como anticipo. 17 L.P.R.A. sec. 510; Sec. 15 del Reglamento del Negocio de la Construcción, *supra*. Además, el Artículo 11 de la Ley Núm. 130, *supra,* y la Sección 20 del Reglamento del Negocio de la Construcción otorga al comprador la facultad para presentar una querella cuando el urbanizador o constructor de su vivienda haya incurrido en una práctica indeseable de la construcción, siempre que le haya requerido que corrija la situación previamente. 17 L.P.R.A. sec. 511; Sec. 20 del Reglamento del Negocio de la Construcción, *supra*.

Como se desprende de lo anterior, un comprador agraviado por defectos de construcción o por falsa representación de la unidad vendida tiene derecho a resolver el contrato de

compraventa o a presentar una querella ante DACO para que se le compense por los daños y perjuicios que sufra. Suárez Figueroa v. Sabanera Real, Inc., *supra*. Dicha agencia también podrá otorgar los demás remedios que en derecho procedan. Felix v. Las Haciendas, *supra*, pág. 847. Es decir, el comprador no está obligado a resolver el contrato cuando no está de acuerdo con los cambios impuestos unilateralmente por el desarrollador, pues la resolución es una potestad que se le concede al primero mediante la Ley Núm. 130, *supra*, y el Reglamento del Negocio de la Construcción, *supra*. Suárez Figueroa v. Sabanera Real, Inc., *supra*.

Con este marco conceptual en mente, pasemos a resolver la controversia ante nuestra consideración.

### III.

En el presente caso, el señor Medina Mouriz presentó una querella en contra de Swiss Chalet luego de percatarse de que la cabida indicada en el folleto, en el contrato de opción y en el contrato de compraventa no correspondía con el área neta habitable del apartamento que se le vendió. De la resolución emitida por DACO se desprende que dicha agencia basó su jurisdicción en la Ley Núm. 130, *supra,* el Reglamento del Negocio de la Construcción, *supra*, y el Reglamento de Anuncios Engañosos, *supra*. Así, contrario a lo resuelto por el Tribunal de Apelaciones, DACO no estableció su jurisdicción únicamente al amparo del Reglamento de Anuncios Engañosos, *supra.*

En vista de ello, resolvemos que el foro apelativo intermedio erró al estimar que DACO no tenía jurisdicción.

Como expusimos anteriormente, la agencia está facultada para atender las querellas presentadas en contra de desarrolladores por compradores que aleguen haber sufrido daños y perjuicios por los defectos de construcción o por la falsa representación sobre la unidad vendida. Felix v. Las Haciendas, *supra*, pág. 847.

De otra parte, en relación con los méritos del caso ante nos, Swiss Chalet señala en su alegato que no incurrió en falsa representación en cuanto al apartamento que vendió al señor Medina Mauriz porque en el folleto y en los contratos firmados por éste se decía expresamente que la cabida era aproximada. Según aduce, el área de 1,022 pies cuadrados que representó era, precisamente, aproximada, por lo que la diferencia entre dicha cabida y el área neta habitable de 950 pies cuadrados que arrojó la tasación, es decir, 72 pies cuadrados, es aceptable. No le asiste la razón.

Según el Diccionario de la Real Academia Española, la palabra "aproximada" significa "aproximativo, **que se acerca más o menos a lo exacto**". (Énfasis suplido). Diccionario de la Real Academia Española, Vigésima Segunda Edición, Madrid, 2001. A la luz de esta definición surge que el área neta habitable de 950 pies cuadrados no es aproximada a un área de 1,022 pies cuadrados. Se trata de una diferencia de 72 pies cuadrados, lo cual no corresponde a lo que una persona promedio entendería que "se acerca más o menos a" 1,022 pies cuadrados.

Por otro lado, Swiss Chalet sostiene que la cabida aproximada de 1,022 pies cuadrados es el área bruta habitable

porque incluye los elementos estructurales del edificio, como las paredes y las columnas, que no pueden ser transmitidos a los compradores, pues lo prohíbe la Ley de Condominios, *supra*. Aduce que, a pesar de que no pueden ser vendidos, éstos elementos están realmente dentro de los apartamentos y pueden ser usados, por lo que no incurrió en falsa representación. Por último, alega que en las escrituras de compraventa de apartamentos como el que compró el señor Medina Mouriz se expresa que el área superficial del apartamento es de aproximadamente 950 pies cuadrados, pues los mencionados elementos no se pueden vender.

El argumento de Swiss Chalet es insostenible. La táctica de tergiversar las cabidas de los apartamentos que están a la venta constituye una práctica nociva para la industria de la construcción en Puerto Rico, pues resulta perjudicial para los compradores que adquieren una propiedad confiando en lo que el desarrollador les señala. Swiss Chalet pretende que avalemos su método de medir apartamentos porque, aunque la cabida aproximada que indicó en todo momento no corresponde a aquella cuya titularidad finalmente transmitió, de todos modos los elementos comunes están dentro de los apartamentos y podrán ser usados por lo compradores. No podemos endosar dicho proceder. Los desarrolladores no pueden anunciar una cosa y vender otra, amparándose en una interpretación acomodaticia de la Ley de Condominios, *supra*. Las medidas de los apartamentos que anuncien y que figuren en los contratos que firmen con los compradores deben corresponder con las

medidas que consten en las escrituras que en su día se otorguen.

IV.

Nos resta resolver si DACO tenía la facultad imponerle a Swiss Chalet al pago de una compensación a favor del señor Medina Mouriz por la disminución en cabida. Alega la referida desarrolladora que, como el apartamento fue vendido a precio alzado, no procede conceder una disminución en el precio de venta. Ello, pues, el Artículo 1360 del Código Civil dispone que en la venta de un inmueble a precio alzado, y no por unidad de medida, no tiene lugar el aumento o disminución del precio cuando aumente o disminuya la cabida. 31 L.P.R.A. sec. 3820.

No obstante, la resolución emitida por DACO dispone expresamente que la cantidad que Swiss Chalet ha de pagar es una **compensación por daños y perjuicios**, no una cuantía por concepto de la reducción en el precio del apartamento. Como indicáramos anteriormente, el Artículo 10(c)(6) de la Ley Núm. 130, *supra*, y la Sección 14.13 del Reglamento del Negocio de la Construcción, *supra*, facultan a DACO a otorgar una compensación por los daños y perjuicios sufridos por un comprador de vivienda. En este caso, DACO utilizó la reducción proporcional en la cabida como parámetro para cuantificar la indemnización que concedió al señor Medina Mouriz por los daños sufridos a raíz de la falsa representación realizada por Swiss Chalet. Surge claramente de la resolución de la agencia que la compensación en cuestión no se confirió al amparo del Código Civil, sino bajo

la legislación especial aplicable, por lo que el argumento de Swiss Chalet resulta improcedente.

V.

Por los fundamentos antes expuestos, se revoca la sentencia recurrida.

Se dictará sentencia de conformidad.


Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eduardo Medina Sánchez,
José A. Medina y Otro

    Peticionarios

      v.                CC-2008-1066       Certiorari

Swiss Chalet, Inc.

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 19 de febrero de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia recurrida.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo