Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ARMANDO SÁNCHEZ CRESPO<br><br>Apelante<br><br>v.<br><br>JESENIA GONZÁLEZ SOTO; SAFETY ROUTE CORP.<br><br>Apelada | KLAN202301036 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de Aguadilla<br><br>Caso Núm.:<br>A DP2017-0064<br><br>Sobre:<br>Daños y perjuicios |

Panel integrado por su presidente el Juez Rodríguez Casillas, el Juez Adames Soto, la Jueza Mateu Meléndez y el Juez Marrero Guerrero.

Rodríguez Casillas, juez ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2024.

Mediante el recurso de apelación epígrafe, comparece ante nos el *Sr. Armando Sánchez Crespo* ("Sánchez Crespo o apelante–demandante"), para que revoquemos la *Sentencia en Reconsideración* emitida y notificada el 11 de septiembre de 2023, por el Tribunal de Primera Instancia ("TPI"), Sala Superior de Aguadilla. Mediante el referido dictamen, el TPI reconsideró la determinación dictada el 6 de marzo de 2023, y desestimó tanto la demanda como la acción derivativa presentadas por el apelante. Además, declaró *Con Lugar* la reconvención sometida por la *Sra. Jesenia González Soto* ("González Soto o coapelada–codemandada").

Oportunamente, el apelante presentó dos (2) mociones de reconsideración, las cuales fueron declaradas *No Ha Lugar* el 19 de octubre de 2023.

Considerados los escritos de las partes, así como los documentos que acompañaron a estos, y la transcripción de la prueba oral ("TPO"), resolvemos **confirmar** el dictamen apelado.

**-I-**

El **6 de febrero de 2017**,[1] señor Sánchez Crespo instó una *Demanda contra coparte* sobre daños y perjuicios contra la señora González Soto.[2] Entre otras cosas, solicitó que se le declarará como único accionista de la corporación *Safety Route Corp.* ("Safety o corporación").[3] La reclamación fue enmendada el **22 de agosto de 2017** a los efectos de incluir a Safety como codemandada.[4] **En la misma fecha**, el apelante sometió una *Petición de acción derivativa*,[5] en la que solicitó, se ordenará la designación de un administrador judicial y la consignación de todos los fondos de la corporación en Secretaría, junto con el informe correspondiente.

Por su parte, la señora González Soto al contestar la demanda enmendada, negó la mayoría de las alegaciones y sometió a su vez una *Reconvención* contra el apelante.[6] En respuesta, el apelante negó las alegaciones de la reconvención.[7]

El **2 de enero de 2018**, Safety contestó la demanda enmendada y la petición de acción derivativa.[8] Adujo que quien incorporó la compañía fue la señora González Soto, por lo que negó todas las alegaciones y solicitó la desestimación de la reclamación.

Ante la solicitud de desestimación,[9] el TPI celebró una vista evidenciaria el **1 de febrero de 2018**. Evaluados los planteamientos de las partes, el foro primario emitió una *Resolución y Orden* el **6 de abril de 2018**.[10] Basado en la prueba presentada, realizó las siguientes determinaciones de hechos:

---

[1] Surge de los expedientes ante nos, que el señor Sánchez Crespo y la señora González Soto se divorciaron en el 2017.
[2] Apéndice VIII de la *Apelación Civil*, págs. 37 – 39.
[3] El apelante señaló que se le adeudan varias sumas referentes a: arrendamientos vencidos, salarios dejados de devengar y balances en tarjeta de crédito.
[4] Apéndice XI de la *Apelación Civil*, págs. 48 – 51.
[5] Apéndice XII de la *Apelación Civil*, págs. 52 – 53.
[6] Apéndice XIII de la *Apelación Civil*, págs. 54 – 60.
[7] Apéndice XIV de la *Apelación Civil*, págs. 61 – 62.
[8] Apéndice XV de la *Apelación Civil*, págs. 63 – 71.
[9] Según la *Resolución y Orden* emitida el 6 de abril de 2018, la coapelada presentó una solicitud de desestimación el 16 de enero de 2018. *Véase,* Apéndice XVII de la *Apelación Civil*, págs. 87 – 91.
[10] Apéndice XVII de la *Apelación Civil*, págs. 87 – 91.

*1. Conforme el Registro de Corporaciones del Departamento de Estado la codemandada Safety Route Corp., tiene designado como agente residente a la aquí codemandada, Sra. Jesenia González Soto.*

*2. Para el año 2011 el demandante-reconvenido Armando Sánchez Crespo y la codemandada-reconviniente Jesenia González Soto, contrataron los servicios profesionales del CPA, Sr. Julián Feliciano Ruiz. Ello con el propósito o encomienda de que incorporara a la aquí codemandada Safety Route Corp. La citada corporación en efecto fue incorporada el 15 de noviembre de 2011.*

*3. La referida corporación codemandada tiene 10,000.00 acciones autorizadas con un valor par de $100.00.*

*4. En el presente caso no está en controversia que nunca se emitieron acciones. Tampoco existe controversia en cuanto a que el demandante-reconvenido Sánchez Crespo aportó aproximadamente la cantidad de $764,000.00, o el 90% del capital que tiene la codemandada Safety Route Corp. El demandante-reconvenido Sánchez Crespo es empleado de la corporación codemandada con un sueldo bruto en $4,500.00 mensuales.*

*5. La Presidente, Secretaria, Tesorera y Agente residente de la corporación aquí codemandada lo es la codemandada-reconviniente González Soto. Como parte de los acuerdos para incorporar a la corporación codemandada es la codemandada-reconviniente González Solo la única accionista de la referida corporación.*

*6. Tanto el local como las facilidades y el terreno en donde opera la corporación codemandada son propiedad del aquí demandante-reconvenido Armando Sánchez Crespo.*

*7. La corporación codemandada recibió un pago por la cantidad de $237,850.18 por los trabajos realizados en un proyecto ya concluido.*

*8. Asimismo, existen casos presentados, al menos dos acciones, en relación a la corporación aquí codemandada ante el Tribunal General de Justicia.*

*9. Al momento en que se celebró la vista evidenciaria, 1 de febrero de 2018, la codemandada-reconviniente Jesenia González Soto no tiene acceso a la oficina de la corporación codemandada. [...].*[11]

En la aludida resolución, el foro primario expresó, en lo pertinente que:

*[C]onforme lo anterior, como vimos, en el presente caso existe un interés beneficiario del demandante lo cual le faculta para presentar la demanda enmendada de epígrafe. Ello aún cuando no posea un título legal accionista.*

*Sin embargo, ello sólo permite que la demanda enmendada, según presentada, por el demandante-reconvenido Sánchez Crespo siga su curso procesal en el caso de autos. En consecuencia, se declara no ha lugar a la solicitud de desestimación de acción derivativa. Por otro lado, nada se ha establecido para que este tribunal valide el que la codemandada-reconviniente González Soto fuera excluida de*

---

[11] Apéndice XVII de la *Apelación Civil*, págs. 88 – 89.

*sus funciones en la corporación codemandada. En vista de ello, de conformidad con la Regla 56.4 de las de Procedimiento Civil de 2009, se ordena que se reinstale a dicha codemandada-reconviniente Jesenia González Soto en sus funciones según reconocidas en el certificado de incorporación de la codemandada Safety Route Corp.[12]*

Luego, el **26 de febrero de 2021** el apelante presentó una *Moción Solicitando Sentencia Sumaria*.[13] Propuso dieciséis (16) hechos esenciales e incontrovertidos, por lo cual, peticionó al TPI que ordenará: la entrega del dinero consignado; el pago por parte de Safety de la deuda pendiente; la entrega de los vehículos corporativos; y, la continuación del pleito sobre todas las controversias pendientes hasta que la coapelada cumpliera con su obligación. En respuesta, la señora González Soto sometió una *Moción en oposición a petición de sentencia sumaria*.[14]

Evaluados los argumentos de las partes, el **19 de octubre de 2021**, el TPI emitió una *Resolución* en la que declaró *No Ha Lugar* la moción de sentencia sumaria.[15] El foro primario concluyó que para que proceda la causa de acción derivativa instada por el apelante, éste tenía la obligación de demostrar que era accionista de Safety. Así pues, determinó que la controversia central del pleito era ***quién es el titular de la mayoría de las acciones de la corporación***. Por ello, y al estimar que el pleito planteaba asuntos de estado mental, intención y actuaciones negligentes en el desempeño de una función corporativa, determinó que no procedía resolver el pleito de forma sumaria, siendo necesaria la celebración de un juicio en su fondo.

Posteriormente, el foro primario ordenó realizar una investigación referente al estado financiero de Safety al *CPA Jorge Aquino Barreto* ("CPA Aquino o perito"). Por lo que, el referido profesional llevó a cabo ciertos procedimientos, incluyendo la

---

[12] Apéndice XVII de la *Apelación Civil*, pág. 90.
[13] Apéndice XVIII de la *Apelación Civil*, págs. 92 – 97.
[14] Apéndice XIX de la *Apelación Civil*, págs. 98 – 112.
[15] Apéndice XX de la *Apelación Civil*, págs. 113 – 120.

evaluación y análisis de información financiera y no financiera, entrevistas a las partes y al contador externo de la Compañía. Concluida la investigación, el CPA Aquino emitió el Informe *Asistencia en el proceso de valoración del capital neto de la entidad Safety Route Corp* ("Informe") el **15 de agosto de 2020**.[16] Esbozó, en lo pertinente, que:

> *[B]asados en nuestro análisis y evaluación de la información financiera y no financiera provista, concluimos lo siguiente:*
> - ***Conforme al estado financiero auditado al 31 de diciembre de 2015, el total de acciones comunes emitidas y en circulación de Safety ascendía a $749,815. A cambio de estas acciones, Safety recibió $483,064 en efectivo y $266,751 en activos como equipo, inventario y maquinaria.***
> - ***Al momento de contraer nupcias, el Sr. Sánchez era el único accionista de dos entidades dedicadas a la industria de construcción: Caribbean Line Pavement Incorporado (en adelante "CLP") y Praderas del Mar, Inc.***
> - ***De los documentos examinados no pudimos determinar quién realizó dichas aportaciones de capital. No obstante, conforme a la información analizada y las entrevistas realizadas, a nuestro juicio, el Sr. Sánchez era quien contaba con el capital suficiente para financiar a Safety, provenientes, principalmente, de CLP y Praderas del Mar. No encontramos información que indique que la Sra. González contaba con bienes equivalentes a la cantidad de capital en acciones comunes aportado a Safety, ascendente a $749,815. Más aún, según Resolución y Orden emitida por el Honorable Tribunal el 6 de abril de 2018, el Sr Sánchez aportó aproximadamente el 90% del capital.***
> - ***Según los estados financieros auditados para los años 2012 al 2015, CLP aportó efectivo a Safety en calidad de préstamo. Conforme al estado financiero auditado al 31 de diciembre de 2015, el balance de la deuda era de $764,574 a favor de CLP (Anejo I). La información más reciente es el referido estado a diciembre de 2015. No obtuvimos evidencia sobre pago alguno a dicho balance ni sobre cantidades prestadas adicionales.***
> - *Al momento de liquidar a Safety, primero hay que liquidar a los acreedores y, luego, el remanente de los activos se distribuye entre los accionistas. El acreedor principal de Safety es CLP, a la cual, se le adeuda la cantidad de $764,574.*
> - *La información provista no es suficiente para identificar y cuantificar los activos y deudas de Safety a la fecha de hoy de forma responsable y cumpliendo con las normas de contabilidad.*[17]

---

[16] Apéndice XV de la *Apelación Civil*, págs. 72 – 86.
[17] Apéndice XV de la *Apelación Civil*, págs. 75 – 76, 83 – 84. *Énfasis nuestro.*

Tras varios trámites procesales,[18] el TPI celebró el juicio en su fondo, los días **21 y 22 de noviembre de 2022**.[19] Las partes estipularon varios documentos,[20] entre ellos: **(1)** Estados financieros,[21] **(2)** Copia certificada del certificado de incorporación de "Safety Road",[22] **(3)** Copia certificada de "CPT Good Corporation",[23] **(4)** Copia del expediente completo de la corporación del Departamento de Estado,[24] **(5)** Registro de Corporaciones una enmienda de "Safety Road Corporation",[25] **(6)** Correo electrónico que recibió la señora Jesenia González del departamento de Estado,[26] **(7)** Escritura número dieciséis de capitulaciones matrimoniales,[27] **(8)** Escritura número cinco de acta notarial,[28] **(9)** Estado de situación financiera del 31 de diciembre del 2011 al 2015,[29] **(10)** Licencias de unos automóviles,[30] **(11)** una certificación de dueño, accionista y beneficiario a nombre de "Safety Road",[31] **(12)** Informe del CPA Aquino.[32]

Como primer testigo de la parte apelante-demandante testificó el CPA Aquino.[33] Cuya capacidad pericial e Informe fue estipulada por las partes.[34] En lo pertinente, el perito expresó que fue contratado para determinar la titularidad de los accionistas de

---

[18] El **18 de agosto de 2022**, el señor Sánchez Crespo recurrió ante este Foro apelativo ante la denegatoria de una segunda solicitud de sentencia sumaria instada por el apelante. Este Tribunal expidió el *certiorari* instado y confirmamos la *Resolución* del TPI.

[19] Véase, *Transcripción de la Prueba Oral* ("TPO"), Tomo 1: Vista del 21 de noviembre de 2022 y Tomo 2: Vista del 22 de noviembre de 2022.

[20] *Véase*; TPO, Tomo 1: Vista del 21 de noviembre de 2022.

[21] *Id.*, a la pág. 18, línea 20.

[22] *Id.*, a la pág. 19, líneas 5 – 6, 20.

[23] *Id.*, a la pág. 20, líneas 7, 18.

[24] *Id.*, a la pág. 20, líneas 13 – 14. *Véase, además*, Anejo I del Apéndice de la Apelada, a las págs. 1 – 51.

[25] *Id.*, a la pág. 21, línea 1.

[26] *Id.*, a la pág. 21, líneas 8 – 9.

[27] *Id.*, a la pág. 21, línea 11.

[28] *Id.*, a la pág. 21, línea 15. *Véase, además*, Anejo IV del Apéndice de la Apelada, a las págs. 112 – 123.

[29] *Id.*, a la pág. 21, líneas 20 – 21 a la pág. 22, líneas 10 – 12. *Véase, además*, Anejo II del Apéndice de la Apelada, a las págs. 52 – 110.

[30] *Id.*, a la pág. 22, líneas 15 – 18.

[31] *Id.*, a la pág. 22, líneas 19 – 22 a la pág. 23, líneas 1 – 4.

[32] *Id.*, a la pág. 23, líneas 5 – 15. *Véase, además*, Apéndice XV de la *Apelación Civil*, a la págs. 72 – 86.

[33] *Véase*, TPO; Tomo 1: Vista del 21 de noviembre de 2022, a las págs. 37 – 139.

[34] *Id.*, de la pág. 37 línea 19 a la pág. 38 línea 2.

Safety.[35] Especificó que, su contratación fue para evaluar los récords contables y determinar quién era el titular de las acciones de Safety.[36] Detalló las tareas que realizó: **(1)** entrevistó al señor Sánchez Crespo y a la señora González Soto; **(2)** examinó los récords de contabilidad y los estados financieros; y, **(3)** uno de sus empleados dialogó con el CPA Feliciano.[37] A preguntas sobre la emisión de las acciones de Safety,[38] y la legalidad de no haber emitido ninguna, el perito contestó que eso era un asunto legal, y él no era abogado.[39] Arguyó, que aun cuando se basó en la decisión del Tribunal referente a que el señor Sánchez Crespo proveyó el 90% de las aportaciones, de los hechos se puede inferir que quien único aportó fue el apelante.[40]

Según su opinión pericial, en el presente caso ocurrió una *fusión*,[41] entre CPL y la otra corporación del apelante.[42] A preguntas sobre los hallazgos, el CPA Aquino concluyó: *"[q]ue* ***no pude determinar quién es el dueño porque, porque no hay un certificado de acciones*** *[...]. [P]ero que la sustancia sobre la forma me dice que el dueño es Armando Sánchez"*.[43] Señaló que la función de una persona dentro de la entidad corporativa no tiene relación alguna con la titularidad,[44] ya que la titularidad la brinda las acciones.[45]

Luego, la parte apelante llamó como testigo a la señora González Soto.[46] Por último, el apelante ofreció su testimonio.[47] En

---

[35] *Id.*, a la pág. 38, líneas 3 – 8.
[36] *Id.*, a la pág. 38, líneas 20 – 21; pág. 39, líneas 1 – 2, 14 – 16.
[37] *Id.*, a la pág. 39, líneas 19 – 21; pág. 40, líneas 5, 10, 14 – 15; pág. 41, línea 2.
[38] *Id.*, a la pág. 46, línea 21.
[39] *Id.*, a la pág. 47, líneas 1 – 11.
[40] *Id.*, a la pág. 46, líneas 7 – 14.
[41] *Id.*, a la pág. 48, líneas 9 – 18.
[42] *Id.*, a la pág. 50, líneas 6 – 21.
[43] *Id.*, a la pág. 59, líneas 2 – 17.
[44] *Id.*, a la pág. 65, línea 13 – 18.
[45] *Id.*, a la pág. 66, línea 6.
[46] La señora González Soto fue considerada testigo hostil e interrogada de manera sugestiva *Véase*, TPO; Tomo 1: Vista del 21 de noviembre de 2022, a las págs. 147 – 237.
[47] *Véase*, TPO; Tomo 1: Vista del 21 de noviembre de 2022, a las págs. 239 – 305.

particular, expresó que Safety nació en el 2013, como una compañía que se incorporó para darle servicio a la seguridad vial en los proyectos de la *Autoridad de Carreteras*, el *Departamento de Transportación y Obras Públicas*, *Autoridad de los Puertos* y proyectos privados.[48] Declaró, además, que dicha compañía surgió con su dinero personal y de la corporación CLP.[49] Señaló que los equipos, vehículos, maquinaria y personal fueron transferidos de la otra corporación a Safety.[50] Referente a los cheques no cobrados, declaró que no los cambiaba para mantener en función la operación.[51] Indicó que se utilizó —para el beneficio de la compañía— una tarjeta de crédito de su persona,[52] y que Safety le quedó a deber $22,000.00 a dicha tarjeta.[53] Sobre el canon de arrendamiento señaló que se hizo un contrato, cuya mensualidad era $3,500.00, pero nunca se efectuó pago alguno, por lo que se le debían más de $175,000.00.[54]

En el contrainterrogatorio se le cuestionó al apelante sobre la aportación personal, específicamente se le preguntó si había presentado evidencia sobre la misma (cheque cancelado, recibo o documento), **a lo que contestó que no**.[55]

Por su parte, la señora González Soto ofreció su testimonio por la parte demandada.[56] Particularmente, expresó cómo nació la compañía,[57] el proceso de los estados financieros de Safety,[58] y las actuaciones por parte del señor Sánchez Crespo que obstaculizaron las operaciones de Safety.[59]

---

[48] *Id.*, a la pág. 240, líneas 3 – 19; pág. 248 línea 14 – pág. 251 línea 3.
[49] *Id.*
[50] *Id.*
[51] *Id.*, a la pág. 263, líneas 12 – 20; pág. 264, líneas 4 – 13.
[52] *Id.*, a la pág. 264, líneas 16 – 19; pág. 265, líneas 7 – 22.
[53] *Id.*, a la pág. 266, líneas 1 – 6.
[54] *Id.*, de la pág. 271, líneas 1 – pág. 272, líneas 10.
[55] *Id.*, a la pág. 274 líneas 17 – 21; pág. 275, líneas 1 – 15.
[56] Véase, TPO, Tomo 2: Vista del 22 de noviembre de 2022, a la pág. 4 – 110.
[57] *Id.*, a las págs. 10 – 11.
[58] *Id.*, a la pág. 21, líneas 5 – 13.
[59] *Id.*, a la pág. 12 – 13; pág. 25, líneas 15 – pág. 26.; pág. 28, líneas 19 – 22.

Para concluir el desfile de prueba oral, el foro de instancia solicitó hacerle unas preguntas al señor Sánchez Crespo.[60]

Sometido el caso, el TPI emitió *Sentencia* el **6 de marzo de 2023**.[61] Allí, se esbozaron las siguientes determinaciones de hecho:

*1. Para el año 2011, las partes contrataron los servicios del CPA Julián Feliciano Ruiz con el propósito de incorporar Safety Route Corp.*

*2. Safety se incorporó 15 de noviembre de 2011, con número de registro 368878 y se designó como Directora, Tesorera y Agente Residente a la Sra. González Soto.*

*3. El demandante aportó la cantidad de $749.815.00, como capital inicial de la compañía Safety Route Corp.*

*4. En la Resolución del 6 de abril de 2018, el Tribunal, sala de Aguada, emitió y determinó que el demandante de epígrafe aportó aproximadamente la cantidad de $764,000.00, ósea, el 90% del capital de Safety Route Corp, en la cual enumera las siguientes determinaciones de hechos:*

*a. Conforme al Registro de Corporaciones, del Departamento de Estado, la compañía Safety tiene designado como Agente Residente a la codemandada, la señora González Soto.*

*b. Para el año 2011, Safety Route Corp., contrató los servicios profesionales del CPA. Sr. Julián Acevedo Ruiz, con el propósito de incorporar la compañía para el 15 de noviembre de 2011.*

*c. La referida corporación tiene 10,000.00 acciones autorizadas con un valor de $100.00.*

*d. En el presente caso no está en controversia que nunca se emitieron acciones[.] Tampoco hay controversia en cuanto a que el demandante[,] señor Sánchez Crespo, aportó aproximadamente $764.000.00, o el 90% del capital que tiene la codemandada Safety, según la Resolución del Juez County Pérez.*

*e. Durante su existencia, Safety operaba en un local de las facilidades, perteneciente al señor Sánchez Crespo.*

*f. Se emitió un pago, a favor de Safety Route Corp, de un proyecto ya terminado por la cantidad de $237,850.18.*

*g. Dicho pago fue cobrado por la aquí demandada, Jesenia González Soto, pero no depositado a la cuenta de la compañía.*

*h. Existen casos presentados, (al menos dos acciones), en relación a la corporación aquí codemandada ante el Tribunal General de Justicia.*

*5. Ambas partes de epígrafe eran empleados de dicha compañía, y el salario del demandante era de $45,000.00 y de la demandada $22.000.00, ambos anuales.*

*6. La parte demandante, mantiene salarios devengados y no cobrados de Safety Route Corp, lo cual asciende a $79.383.32, que corresponden a cheques de nómina del demandante, Armando Sánchez Crespo, no cobrados.*

---

[60] *Id.*, de la pág. 115 línea 6 a la pág.123 línea 3.

[61] En los documentos anejados como apéndice del apelante, éste solo nos presentó las páginas 1 a la 4 de la *Sentencia* dictada. No obstante, a solicitud de este Foro, el TPI de Aguadilla nos hizo llegar el 7 de marzo de 2024 la *Sentencia* con todas sus partes. *Véase,* Apéndice XXI de la *Apelación Civil*, págs. 121 – 124.

**7.** *Dentro del presente caso, se contrató por el propio Tribunal al CPA, Jorge Aquino De Córdova, para realizar un estudio forense de las finanzas de Safety Route Corp. y que dicha conclusión lo expresara en un informe final, el cual es vinculante por todas las partes ya que fue escogido con la anuencia de todas las partes.*

**8.** *Dicho informe se realizó el 15 de octubre de 2020, y no fue disputado por ninguna de las partes, a pesar de que la parte codemandada, Jesenia González Soto solicitó permiso para disputar dicho informe término que el Tribunal concedió.*

**9.** *El juicio comenzó con el testimonio del Contable Público Autorizado Jorge Aquino De Córdova.*

**10.** *El Contador Público Autorizado, testificó a base de su informe Final del 15 de octubre de 2020. (Exhibit I).*

**11.** *Para poder realizar dicho informe, testificó que realizó múltiples evaluaciones, estudios y entrevistas, a las partes y examinó documentos pertinentes.*

**12.** *Parte de los documentos examinados, lo fueron los estados financiaros auditados de la corporación Safety Route Corp, desde el año 2011 al 2015, (Exhibit 2)*

**13.** *En adición, en la resolución del 6 de abril de 2018, emitida por el Juez Héctor Jaime County Pérez. (Identficación 1).*

**14.** *Este informe y la contratación del perito, se realizó por acuerdo de las partes, por lo que dicho informe es vinculante para todas las partes en el presente caso.*

**15.** *Tanto en su testimonio como en el informe, se sostuvo, a preguntas de ambas partes y del Tribunal, que según el estado financiero auditado del 31 de diciembre de 2015, el total de acciones de Safety de $749,815.00, de los cuales $483,064.00 eran en efectivo y $266,751.00 en activos.*

**16.** *Según lo evaluado, concluyó que quien contaba con el capital suficiente para financiar a Safety, era el señor Armando Sánchez Crespo.*

**17.** *El perito utilizó en adición, la Resolución del Juez, Héctor Jaime Conty Pérez del 6 de abril de 2018. (Exhibit I)*

**18.** *Dicha Resolución, establece que el Sr. Sánchez Crespo, aportó aproximadamente el 90% del capital de Safety Route Corp, sin reparo de las partes.*

**19.** *Testificó el CPA, que la demandada no contaba con ningún peritaje o experiencia, en el ambiente de la seguridad vial, sino que era el demandante quien contaba con dicho conocimiento.*

**20.** *En el Contrainterrogatorio, el Lcdo. Fernández Mejías, abogado de la demandada, Jesenia González Soto, en cuanto a la creación de Safety, el CPA establece que se basa, en que la creación de Safety Route Corp, en una fusión entre las antiguas compañías del Sr. Armando Sánchez, entiéndase, Pradera Inc. y CLP Inc.*

**21.** *Testificó, además, que aunque tal fusión, como cuestión de hecho, no cumple con la Ley de Corporaciones Generales de Puerto Rico, la sustancia y los hechos establecen, que se realizó tal fusión.*

**22.** *A preguntas del licenciado Pérez Villanueva en su re-directo, testificó el CPA, que lo surgido en cuanto a la fusión, si fue o no basada en derecho, no cambia el resultado y conclusiones de su informe.*

**23.** *El Tribunal cuestionó que si lo que deseaba transmitir el perito, era que sin la fusión de Praderas Inc. y CLP, no se hubiese podido crear Safety Route Corp, a lo que el perito expresa, que Safety Route Corp nació de dichos activos de las dos Corporaciones pertenecientes al demandante.*

**24.** *El próximo testigo lo fue la Sra. Jesenia González Soto.*

**25.** *A preguntas del licenciado Pérez Villanueva sobre la creación de Safety Route Corp, la señora González Soto, expresó que la creación se debió a movimiento de activos de CLP, compañía perteneciente 100% al demandante.*

**26.** *Testificó la señora González Soto, que en su antiguo trabajo, era vendedora de calzado y alquiler de etiquetas en Angelo's Tuxedo.*

**27.** *Continúo laborando por un tiempo en la compañía CLP y posteriormente bajo Safety Route Corp. como Asistente Administrativo.*

**28.** *En dicho empleo, devengaba un salario de aproximadamente $22,000.00 anuales.*

**29.** *Sobre los salarios, la Sra. González Soto afirmó que el demandante, también era empleado de dicha compañía y devengaba un salario pagado en cheques, los cuales la testigo era quien firmaba que era parte de sus funciones.*

**30.** *A preguntas del licenciado Pérez Villanueva expresó, que el salario del demandante era de alrededor de $45,000.00 anuales.*

**31.** *Indagando el licenciado Pérez Villanueva, la testigo expresó que el señor Sánchez Crespo, cambiaba los cheques que devengaba como salario, a lo que el abogado, como prueba de impugnación presentó como evidencia, 42 cheques, que fueron identificados.*

**32.** *En el contrainterrogatorio, la testigo Jesenia González Soto, expresó que tenía dudas sobre la firma del primer cheque que se le presentó, no obstante, admitió que los otros 41 cheques, tenían su firma y la del señor Sánchez Crespo, los cuales fueron admitidos como evidencia y marcados como Exhibit.*

**33.** *Dichos cheques era el salario devengado por el señor Sánchez Crespo, los cuales no estaban ni endosados ni cobrados en institución financiera, siendo esto una aportación a la compañía Safety Route Corp., que le adeuda al señor Sánchez Crespo.*

**34.** *El último testigo de la parte demandante, lo fue el señor Sánchez Crespo.*

**35.** *Este comienza con el trasfondo de la compañía Safety Route Corp,*

**36.** *Expresó que la compañía surgió de aportación privada del demandante, así como equipo de CLP Inc.*

*37. Durante el turno del directo, el demandante testifica que la Sra. González Soto fue su esposa y este le dio oportunidad de empleo en CLP Inc. y con posterioridad bajo la compañía Safety Route Corp.*

*38. En su testimonio, expresa que su conocimiento en el ambiente de la seguridad vial, comenzó en el año 1991, bajo las empresas de Arturo Díaz hasta el 1996[.]*

*39. Incorporó Caribbean Life Payment y como macro, de esta última, CLP Inc. en el año 2001 hasta el 2012.*

*40. Con posteridad, creó Safety Route Corp, como fusión de CLP Inc, junto con capital privado del propio demandante.*

*41. A preguntas del Lcdo. Pérez Villanueva, testificó sobre los cheques de la parte demandante, y admitidos en evidencia, declaró que eran su salario y que los mismos no fueron cambiados por él.*

*42. La cuantía de dichos cheques era en alrededor de $80,000.00. En adición a los cheques mencionados, se utilizó su tarjeta de crédito personal, la cual se utilizaba para compra de materiales de emergencia.*

*43. No obstante, Safety Route Corp no pagaba la mensualidad de la misma, manteniendo una deuda de alrededor de $22,000.00, de Safety Route Corp. hacia el demandante, señor Sánchez Crespo[.]*

*44. Como parte de las deudas que Safety Route Corp, existía el canon de arrendamiento del edificio perteneciente, privativamente, al señor Sánchez Crespo[.]*

*45. El canon de arrendamiento era de $3,500.00 mensuales, los cuales nunca fueron pagados por Safety y la deuda asciende a alrededor $175,000.00. [sic].[62]*

Además, de la referida sentencia surge cual evidencia fue creída por el foro primario. En lo pertinente, expresó que:

*1. El testimonio del Contable Público Autorizado Jorge Aquino De Córdova, tiene toda confiablidad y credibilidad para este Tribunal.*

*2. El testimonio de la parte demandante, Armando Sánchez Crespo, tiene toda confiablidad y credibilidad para este Tribunal. Pudo demostrar que Safety Route Corp, fue - incorporada mediante la fusión de sus pasadas compañía y aporte de su capital privado[.]*

*3. El testimonio de la parte demandada, Jesenia González Soto, fue uno ambiguo donde no pudo establecer su aportación para la creación de la compañía Safety Route Corp., testimonio no creído. A su vez, totalmente inconsistente en sus contestaciones, sobre todo en las relacionadas a la creación y funcionamiento de Safety Route Corp.[63]*

---

[62] Apéndice XXI de la *Apelación Civil*, págs. 122 – 124. *Véase, además, Sánchez Crespo v. González Soto y otros.*, Civil Núm. ADP2017-0064 (602), Sentencia de 6 de marzo de 2023, a las págs. 2 – 5.
[63] *Véase, Sánchez Crespo v. González Soto y otros.*, Civil Núm. ADP2017-0064 (602), Sentencia de 6 de marzo de 2023, a las págs. 6 – 7.

Basado en las determinaciones de hechos, la evidencia creída y el derecho aplicable, el TPI expresó que:

*1. De los testimonios de ambas partes y de la prueba presenta surge de la existencia de la compañía Safety Route Corp. la cual fue creada en el año 2011.*

*2. Safety Route Corp. fue creada mediante la fusión de Praderas Inc. y CLP Inc., ambas empresas pertenecientes a Armando Sánchez Crespo, parte demandante.*

*3. Las corporaciones constituyentes, fueron Praderas Inc. y CLP Inc. y mientras que la sobreviviente lo fue Safety Route Corp.*

*4. Safety Route Corp. absorbió ambas empresas y por tanto los accionistas de las primeras, terminaron siendo accionistas de Safety Route Corp.*

*5. Safety Route Corp, fue el instrumento o alter ego, de la demandada, Jesenia González Soto, a la vez que utilizaba dicha compañía para beneficiarse económicamente del capital corporativo de Safety Route Corp.*

*6. En el Registro de incorporación de la compañía Safety Route, la Presidente, Tesorera y Agente Residente lo era la Sra. González Soto.*

*7. No obstante, era la Asistente Administrativa de Safety Route Corp. eso es concluyente, para el Tribunal sobre el mal funcionamiento de la Corporación, ya que el conocedor del funcionamiento de negocio de Corporación de Safety Route es el demandante Armando Sánchez.*

*8. Sus actuaciones en contra del beneficio económico de Safety Route Corp, y al Sr. Sánchez Crespo ser un accionista de la compañía, se cumple a cabalidad con las exigencias de la Ley General de Corporaciones de Puerto Rico, en cuanto a la acción derivativa.*

*9. La Determinación mediante Resolución del Juez Conty Pérez, (Exhibit I) nunca fue objetada, impugnada o revisada, por lo que constituye una determinación Final y Firme que ilustra al Tribunal pero no es la adjudicación de la controversia lo cual se realiza seis años después.*

*10. El Informe Pericial del CPA Jorge Aquino De Córdova, fue admitido en evidencia y no pudo ser impugnado por la codemandada, Jesenia González Soto.*[64]

Por lo antes expuesto, el TPI declaró *Con Lugar* la demanda, y *No Ha Lugar* la *Reconvención.* Consecuentemente, determinó que la coapelada debía pagarle al apelante las siguientes sumas: **$230,000.00** por los incumplimientos, **$450,000.00** bajo la

---

[64] *Véase, Sánchez Crespo v. González Soto y otros.*, Civil Núm. ADP2017-0064 (602), Sentencia de 6 de marzo de 2023, a la pág. 7.

indemnización en daños, y **$20,000.00** en concepto de honorarios por temeridad.

No conforme con la determinación, el **22 de marzo de 2023** la coapelada solicitó reconsideración.[65] Argumentó, que varias determinaciones de hechos y/o conclusiones de derecho emitidas por el TPI fueron incorrectas. Inició sus planteamientos, con la Determinación de Hecho #3, en la cual el foro de instancia estableció que: *"El demandante aportó la cantidad de $749.815.00, como capital inicial de la compañía Safety Route Corp."*.[66] La coapelada adujo que dicha determinación no estaba avalada por la prueba presentada. Indicó que, según el Informe no se pudo determinar quien realizó las aportaciones a Safety. Arguyó, además, que CPL le proveyó dinero y maquinaria a Safety, pero no el apelante en su carácter personal, por lo que éste carecía de legitimación activa.

Como segundo argumento, planteó que el TPI erró al concluir que en Puerto Rico rige la teoría de la fusión de *facto* entre corporaciones, y, por consiguiente, determinar que CLP, Praderas y Safety se habían fusionado de *facto*.[67] Además, determinar que Safety fue el *alter ego* de la coapelada,[68] sin haberse desfilado prueba sobre ello. Por último, alegó que un juez no queda atado por sus determinaciones interlocutorias, por lo cual, señaló que las

---

[65] Apéndice XXII de la *Apelación Civil*, págs. 125 – 129.

[66] *Véase,* la *Determinación de Hecho #3* en *Sánchez Crespo v. González Soto y otros.*, Civil Núm. ADP2017-0064 (602), Sentencia de 6 de marzo de 2023, a la pág. 2.

[67] La coapelada señaló que el foro primario se equivocó al realizar la Determinación de Hechos #2 y la Conclusión de Derecho #20, a saber:
*20. En el Contrainterrogatorio, el Lcdo. Fernández Mejías, abogado de la demandada, Jesenia González Soto, en cuanto a la creación de Safety, el CPA establece que se basa, en que la creación de Safety Route Corp, en una fusión entre las antiguas compañías del Sr. Armando Sánchez, entiéndase, Pradera Inc. y CLP Inc."*
*2. Safety Route Corp. fue creada mediante la fusión de Praderas Inc. y CLP Inc., ambas empresas pertenecientes a Armando Sánchez Crespo, parte demandante. Véase; Sánchez Crespo v. González Soto y otros.*, Civil Núm. ADP2017-0064 (602), Sentencia de 6 de marzo de 2023, a las págs. 2, 7.

[68] Determinación de Hecho #5: *"Safety Route Corp, fue el instrumento o alter ego, de la demandada, Jesenia González Soto, a la vez que utilizaba dicha compañía para beneficiarse económicamente del capital corporativo de Safety Route Corp".* *Véase, Sánchez Crespo v. González Soto y otros.*, Civil Núm. ADP2017-0064 (602), Sentencia de 6 de marzo de 2023, a la pág. 3.

determinaciones de hecho de una resolución interlocutoria no son vinculantes a nivel del juicio y sentencia.[69]

De igual manera, Safety solicitó reconsideración el **28 de marzo de 2023**.[70] Entre sus argumentos, alegó que no se desfiló prueba que sustente y/o acredite la conclusión de que cualquier accionista, incluyendo la señora González Soto, haya sido *alter ego* de Safety.

Así, pues, el apelante se opuso a las mociones de reconsideración instadas por ambas apeladas.[71]

Surge del expediente que, el TPI citó a una Vista el **10 de agosto de 2023** para discutir la reconsideración solicitada.[72] Mediante la *Sentencia en Reconsideración* emitida y notificada el **11 de septiembre de 2023**, el foro primario acogió los argumentos en reconsideración instados por la señora González Soto.[73] En la aludida determinación, el foro de instancia esbozó las siguientes determinaciones de hechos:

> **1.** *La Demandada Jesenia González ("González") y el Demandante Armando Sánchez ("Sánchez") contrajeron matrimonio en el año 2003 bajo el Régimen de Separación de Bienes. (Exhibit 4).*
>
> **2.** *En el año 2011, en el mes de noviembre, estos acordaron la incorporación de Safety Route Corporation, ("Safety" o "la corporación") en la cual la González sería la única accionista, oficial, directora y principal ejecutiva.*
>
> **3.** *Se acordó que Sánchez no tendría participación alguna en el manejo, capital, y administración de la corporación. Así quedó evidenciado en los estados financieros auditados de Safety de los años 2012 (nota 5 "LA SEÑORA JESENIA GONZALEZ SOTO, Presidenta de la Compañía, posee el 100% de las acciones de la Corporación."), 2013 (nota 6), 2014 (nota 7), y 2015 (nota 7) donde se establece que la única persona con derechos de capital sobre la corporación lo es Jesenia González. Como indicaremos en las conclusiones de derecho;*

---

[69] *Véase,* la *Determinación de Hecho #4* en *Sánchez Crespo v. González Soto y otros.*, Civil Núm. ADP2017-0064 (602), Sentencia de 6 de marzo de 2023, a las págs. 2 – 3.

[70] Apéndice XXIII de la *Apelación Civil*, págs. 130 – 132.

[71] Aunque del expediente surge un documento intitulado "*MOCION EN OPOSICION A RECONSIDERACION*" con fecha del 12 de enero de 2023, el mismo no corresponde a la oposición a las solicitudes de reconsideración presentadas. Entendemos que se debió a un error, ya que en el *Índice de Apéndices* surge como ultimo anejo "*Oposición a Reconsideraciones*". No obstante, tomamos como cierto que en la *Sentencia en Reconsideración* establece que el apelante se opuso y negó los señalamientos de dichas solicitudes.

[72] Véase, Apéndice I de la *Apelación Civil*, pág. 3.

[73] Apéndice I de la *Apelación Civil*, págs. 1 – 19.

*la doctrina nos conduce a otorgarle **gran deferencia y credibilidad a las notas de un estado financiero redactado según los principios de contabilidad generalmente aceptados y avalados por un Contador Público Autorizado en ley**. (GAAP, por sus siglas en inglés).*

***4.*** *Para el inicio de operaciones de Safety, la corporación C.L.P, Inc. ("CLP"), le concedió, **en calidad de préstamo**, a Safety, equipos y efectivo que ascendieron a la suma de $764,574.00, según surge del Informe del CPA contratado por el Tribunal (Exh.1) el cual concluye que no pudo determinar quién realizara aportaciones a cambio de capital, pero sí indica que una corporación, C.L.P., Inc. **le proveyó efectivo y equipos** a Safety **en calidad de préstamo por $764,574; y así también surge de los estados financieros auditados de Safety** (Exh 6, y el Estado Financiero del último año, 2015, pagina 11, Nota 7). Así lo reconoció también la representación legal de Sánchez en la vista de discusión de la Moción de Reconsideración; al indicar, en varias ocasiones, que las aportaciones a Safety las había realizado CLP, no Sánchez en su carácter personal.*

***5.*** *Según su testimonio, Sánchez conocía el contenido de los estados financieros del 2012-15 de Safety; los cuales, en sus notas, reconocían a la demandada como única accionista.*

***6.*** *Sánchez y González; reconocieron, en corte abierta, el haber firmado una **Certificación de Accionistas**, dirigida al Banco Santander, del 6 de abril de 2015; la cual indica que la tenedora y dueña, del l00 % de las acciones de Safety lo era González. (Exhibit 8).*

***7.*** *Sánchez no presentó absolutamente **ninguna** evidencia documental para sustentar su alegación de ser el único accionista de Safety ni de haber realizado aportación alguna en su capacidad personal. **Admitió que no existe ningún documento, cheque cancelado o papel que evidencia su alegada aportación en efectivo a Safety.***

***8.*** *Al día 31 de diciembre de 2015, Safety tenía una cuenta por pagar o deuda con CLP por la suma de $764,574.00; según un préstamo obtenido por Safety de CLP. Esta última corporación no es parte en el presente caso.*

***9.*** *Según el expediente oficial del Departamento de Estado de Puerto Rico, Safety fue incorporada por González, como su única oficial y agente residente, el día 11 de diciembre de 2011. (Exhibit 2, paginas 3-8).*

***10.*** *Según los Informes Anuales de Safety, para los años 2012-15; González continuaba apareciendo como la única oficial y persona autorizada de Safety. Sánchez **no aparece en ninguna capacidad oficial**. (Exhibit 2, páginas 14 y siguientes).*

***11.*** *El día 15 de agosto de 2016, Sánchez, sin la autorización de González, sometió al Departamento de Estado varias enmiendas el Certificado de Incorporación de la corporación Safety, con relación a los nombres y direcciones de los oficiales y directores, la dirección de la oficina principal y la identidad y dirección del agente residente. **En ellos, sustituye el nombre y las direcciones de González por los de Sánchez. (Exhibit 2, paginas 30-42)**.*

***12.*** *Las actuaciones antes indicadas se apoyaron en una alegada "Resolución Corporativa" de la corporación Safety;*

*pero suscrita por Sánchez sin ocupar posición alguna en la corporación, el día 13 de agosto de 2016; en la cual Sánchez certifica que en una reunión de la Junta de Accionistas de la corporación, en la que se alega se "estableció quorum reglamentario", alegadamente se había aprobado "destituir la Junta de Directores Existente, para constituir una nueva". (Exhibit 2, paginas 30-42).*

**13.** *Al enterarse de ello, González procedió a impugnar tales actuaciones ante el Departamento de Estado, el cual, notificó a Sánchez de la impugnación mediante carta del día 19 de agosto de 2016. (Anejo 2, página 43).*

**14.** *Sometió además González, una declaración jurada al Departamento de Estado relatando lo sucedido. (Anejo 2, páginas 44-45) En ella se aseveró que no se había citado ninguna reunión de accionistas y que la corporación nunca autorizó los cambios sometidos por Sánchez al Departamento de Estado.*

**15.** *Luego de realizar el correspondiente trámite administrativo y concederle varias prórrogas a Sánchez para que se expresara que vencieron el 23 de septiembre de 2016; el Departamento de Estado* **restituyó** *a González como Presidenta y única oficial y directora de la corporación Safety; el día 2 de noviembre de 2016. (Anejo 2, página 2).*

**16.** *El día 6 de febrero de 2017, Sánchez presentó su demanda en el presente caso.*

**17.** *Según el testimonio de González, en o cerca del 17 de febrero de 2017, Sánchez procedió a cambiar los cerrojos y cerraduras de las oficinas de la corporación y procedió a remover, equipos, computadoras, récords y papeles de la referida oficina. Así lo constató González mediante un Acta Notarial del 28 de febrero de 2017. (Exhibit 5).*

**18.** *Según el testimonio de González, a ésta como Presidenta de la Corporación, se le denegó acceso a las oficinas de la corporación, localizadas en un inmueble propiedad de Sánchez.*

**19.** *Lo antes señalado ha provocado la suspensión de las operaciones de Safety; incluyendo la finalización de trabajos administrativos y contratados.*

**20.** *El informe de la firma Aquino de Córdova, Alfaro and Co. no contiene ninguna referencia a una fusión o consolidación de facto o de iure entre Safety, CLP, Praderas del Mar, Inc. ("Praderas") o ninguna otra entidad corporativa. Dicho concepto tampoco fue alegado por la parte Demandante Sánchez en su Demanda Enmendada.*

**21.** *No obstante, lo antes indicado; el testigo CPA Jorge Aquino de Córdova, testificó que a su juicio, había operado una fusión de facto entre Safety, CLP y Praderas; por lo cual ahora el único accionista de la corporación que dijo sería la sobreviviente, Safety, lo sería Sánchez. No obstante, este, al ser contrainterrogado* **admitió que no existía ningún documento o acuerdo de fusión entre estas corporaciones presentado al Departamento de Estado y que no estaba en posición de emitir un juicio legal sobre la validez de su aseveración por no ser un abogado***.*

**22.** *Según el Expediente Certificado de Safety del Departamento de Estado, al día 4 de noviembre de 2016; no*

*se había presentado ninguna petición o acuerdo de fusión o consolidación con ninguna otra corporación. (Exhibit 2).[74]*

De la sentencia apelada surge que, el foro primario analizó lo siguiente:

*1. En el presente caso, habíamos determinado que Safety se había fusionado con CLP y Praderas, al momento de su fundación; siguiendo el testimonio del CPA Aquino de Córdoba.*

*2. Bajo esa premisa, entendimos que Sánchez, que aunque no había probado ser accionista de Safety, sí indicó ser el único accionista de CLP y Praderas, por lo que entendimos que podría tener legitimación activa para mantener su reclamación.*

*3. No obstante, un cuidadoso análisis de los requisitos de la Ley de Corporaciones para el perfeccionamiento legal de una fusión en Puerto Rico y lo dispuesto por el Tribunal Supremo en Puerto Rico Fuels v Empire Gas […] así como el hecho de que se trata de un asunto estrictamente de derecho y no contable; nos mueve a reconsiderar nuestra decisión.*

*4. En primer término, surge claramente que el Informe Pericial de la firma de CPA's indicada en ningún momento menciona la posibilidad de la ocurrencia de una fusión de facto, entre Safety, CLP y Praderas. Tampoco existe ninguna documentación en el expediente sobre acuerdo por escrito alguno firmado entre estas corporaciones y el récord certificado del expediente de Safety en el Departamento de Estado, nada indica sobre fusión alguna.*

*5. Segundo, la firma Aquino de Córdova, Alfaro and Co., fue contratada para realizar un informe pericial contable; no legal y **no pueden expresar opiniones de naturaleza puramente legal**; totalmente fuera del ámbito de su encomienda y la práctica de su profesión.*

*6. Además, la teoría de la alegada fusión de facto, **nunca fue alegada por la Demandante**; por lo que las Demandadas estaban en una posición de indefensión al momento de ser traída sorpresivamente el día del juicio tal novel teoría, no por la Demandante, sino por un perito en contabilidad (lego en asuntos de derecho) **que nunca fue comisionado para que realizara tal determinación legal**.*

*7. Por lo tanto, reconsideramos y determinamos ahora que no se perfeccionó ni existió una fusión en términos jurídicos en el presente caso. Así, no siendo Safety un sucesor de las obligaciones y derechos de CLP o Praderas, **solo subsiste una relación de deuda entre Safety y CLP**; en la cual, Safety reconoce en su último estado financiero auditado adeudarle la suma de $764,574.00.*

*8. Establecido ello; tanto por el informe del CPA como por los estados financieros auditados de Safety, entonces debemos determinar **si Sánchez, en su capacidad personal, tiene o no legitimación activa para presentar una reclamación contra Safety y González**.*

*9. Como indicáramos en las conclusiones de derecho; una Corporación en Puerto Rico tiene una personalidad jurídica*

---

[74] Apéndice I de la *Apelación Civil*, págs. 3 – 5.

*distinta y separada a la de sus accionistas, oficiales y directores. **Así, CLP, Praderas, Safety y Sánchez tienen personalidades jurídicas y patrimonios distintos y separados**.*

**10.** *Por lo tanto, si lo que Sánchez alega que fue una aportación de capital realizada por él, como persona natural por aproximadamente $749,815.00, es como indican los estados financieros de Safety, en realidad un préstamo que le hiciera CLP (no Sánchez) a Safety; **entonces solo CLP, como persona jurídica acreedora, tendría, en principio, legitimación activa para presentar una demanda en cobro de dinero, no en reconocimiento de accionista**. Pero lo cierto es que CLP no es, ni ha sido parte en el presente caso. El único promotor y reclamante de esta acción civil lo es Sánchez, en su capacidad personal.*

**11.** *Por ello, Sánchez, **en su capacidad personal**, no realizó transacción de crédito alguna con Safety. Quien realizó la transacción de concederle un préstamos a Safety lo fue CLP; por lo que en su **patrimonio personal no pudo haber sufrido Sánchez un daño que le conceda legitimación activa para reclamarle judicialmente a Safety. Y es que Safety no le adeuda nada a Sánchez y sí a CLP.** De hecho, Sánchez, salvo en su inútil intento de falsificar una Resolución corporativa de Safety, jamás ocupó una posición de Director u Oficial en Safety.*

**12.** *No teniendo Sánchez legitimación activa, procede entonces la desestimación de la reclamación de este contra Safety y González.*

**13.** *En cuanto a la acción derivativa, ante la inexistencia de la condición de accionista de Sánchez en la corporación Safety; no puede proceder la causa de acción derivativa; primero, porque Sánchez nunca fue accionista de Safety (pues nunca se siguió el proceso que para ello requiere la ley de corporaciones) siendo este un requisito estatutario y jurisprudencial para este tipo de reclamo y segundo, porque tampoco nunca le notificó Sánchez a la Safety el requerimiento previo de reclamo extrajudicial que requiere la jurisprudencia para que proceda la acción derivativa.*

**14.** *Además, en la medida que Sánchez conocía el contenido de las notas de los estados financieros del 2011-15 que reconocían a la Demandada González como única accionista; participó y toleró la conducta por la cual se queja ahora; quedando impedido de reclamar contra ella. Esa conducta impide que se ejercite la acción por haber el propio Demandante participado activamente de las actividades que alega le afectaron.*

**15.** *Debemos reconsiderar nuestra conclusión de derecho 5, que indica que Safety fue al ALTER EGO de González. Lo cierto es que tras analizar detalladamente el expediente del caso, no encontramos que el Demandante alegara o presentara evidencia alguna que cumpla con los estrictos criterios jurisprudenciales antes señalados que deben cumplirse antes de que podamos descartar la personalidad jurídica de una corporación. Por el contrario, la prueba reseña que la corporación Safety: **a)** cumplió con las formalidades corporativas del 2011-2015 (Exhibits 2 y 8), **b)** llevaba su contabilidad independiente a la de su accionista y oficiales (Exhibit 6) y **c)** mantenía sus equipos y vehículos registrados a su nombre. (Exhibit 7).*

*16. Por último, en cuanto a nuestra Determinación de Hechos 4 y Conclusión de Derecho 9; donde se indica que nadie recurrió al Tribunal de Apelaciones de la Resolución interlocutoria del Tribunal del día 6 de abril de 2018, sobre una petición de remedio provisional en la que se indicó que el Demandante aportó aproximadamente la cantidad de $764,000.00, o el 90% del capital de Safety; reconsideramos la misma a la luz del derecho aplicable antes resumido. Veamos.*

*17. En primer término, al tratarse de una Resolución Interlocutoria dictada en lo albores del caso; donde apenas iniciaba el descubrimiento de prueba, no podemos concederle la característica de finalidad en los méritos que requiere la jurisprudencia del Tribunal Supremo.*

*18. Segundo, porque tampoco se había rendido el Informe de la firma de CPA contratada que determinó que la aportación a Safety la había realizado CLP en calidad de préstamos y no Sánchez en su capacidad personal. No se trató, por lo tanto, de una adjudicación en los méritos del hecho medular del caso; sino por el contrario, de una determinación preliminar de hechos para avalar la concesión de un remedio provisional.*

*19. Por otro lado, en cuanto a la reconvención de González, quedó evidenciado que Sánchez, no siendo oficial o director de Safety, en el año 2016, sometió fraudulentamente al Departamento de Estado una Resolución corporativa autoproclamándose como nuevo Director, Presidente y Agente Residente de la corporación. (Exhibit 2).*

*20. Además, quedó establecido que en febrero del 2017, Sánchez le denegó a González el acceso a las oficinas de Safety; lo que causó el cese de las operaciones de la corporación desde el 2017 al presente.*

*21. En la medida que la corporación se vio forzada a cesar operaciones desde principios del 2017 por las actuaciones de Sánchez al colocar un candado en las puertas de la oficina de Safety y sustraer archivos y récords de esta; la merma en el capital de Safety fue causada por las referidas actuaciones del demandante Sánchez.*

*22. Por ello, la causa próxima de los daños que sufriera González al perderse la plusvalía de Safety por el cese de sus operaciones lo fueron a nuestro juicio, precisamente, las actuaciones de Sánchez al tratar de cambiar la dirección de Safety en el Departamento de Estado, cerrar los portones de la oficina de Safety y apropiarse de sus récords y equipos, necesarios para su operación.*

*23. Según el último estado financiero de Safety del 2015; (Exh. 6) esta tenía un capital y sobrante de **$438,092.00; aún después de restarse de los activos totales el pasivo relativo a la suma de $764,574.00 adeudada a CLP,** (ver páginas 4 (pasivos y equidad) y 11 (nota 7) del estado de 2015, Exh. 6).*

*24. Por ello, dicha suma representa el monto de la pérdida de la Sra. Jesenia González como consecuencia directa de las acciones de Sánchez al paralizar las operaciones de la corporación.*[75]

---

[75] Apéndice I de la *Apelación Civil*, págs. 15 – 19.

Por lo que, el foro primario determinó, en lo pertinente, que:

*1. Se desestima la Demanda según Enmendada y la Acción Derivativa de la parte Demandante Sánchez contra González y Safety.*

*2. Se declara Con Lugar la Reconvención de la Demandada González; por lo que se condena a Sánchez a pagarle a González una indemnización por los daños sufridos por esta en la pérdida de su inversión en Safety por la suma de $438,092.00; más las costas en el presente caso y los intereses al tipo legal desde la presentación de la demanda. [...].*[76]

Inconforme con el dictamen en reconsideración, el apelante sometió dos (2) mociones de reconsideración el **25 de septiembre de 2023**.[77] En la primera reconsideración, señaló que el TPI se equivocó al no considerar: **(1)** los cheques emitidos como pago por su trabajo, pero no desembolsados; **(2)** los cánones de arrendamiento adeudados; y **(3)** la deuda de aproximadamente $22,000.00 en la tarjeta de crédito personal. Sobre estos asuntos, el apelante adujo que no fueron disputados ni hubo prueba en contrario por la parte contraria.

En la segunda reconsideración, argumentó que el foro primario incidió al determinar que el apelante debía indemnizar a la apelada por la suma de $438,092.00, ya que no se presentó prueba sobre sus alegaciones. Además, arguyó que el foro de instancia erró al indicar que el apelante carece de legitimación activa.

Oportunamente, la coapelada sometió *Moción de Oposición a Mociones de Reconsideración.*[78] Alegó, entre otras cosas, que en la demanda enmendada no se presentó reclamación sobre dichos asuntos. Especificó, que no se desfiló prueba sobre la cantidad de renta adeudada, y señaló, que el apelante tenía la prerrogativa de cobrar los cheques y solicitar los reembolsos correspondientes. Sobre la segunda reconsideración, en síntesis, indicó que el apelante no expone argumentos fácticos y jurídicos que merezcan ser

---

[76] Apéndice I de la *Apelación Civil*, pág. 19.
[77] *Véase*, Apéndice III & Apéndice IV de la *Apelación Civil*, págs. 21 – 24, 25 – 30.
[78] Apéndice V de la *Apelación Civil*, págs. 31 – 34.

reconsiderados. Así, el **19 de octubre de 2023** el TPI declaró *No Ha Lugar* las reconsideraciones.[79]

Aun inconforme, el señor Sánchez Crespo recurrió ante nos el **21 de noviembre de 2023**. Mediante la *Apelación Civil*, señaló la comisión de cinco (5) errores:

> **(1)** *Erró el Honorable Tribunal de Primera Instancia al ignorar en consideración la Resolución y las Determinaciones de Hechos, Interlocutoria, emitida por el Juez Héctor Jaime Conty, la cual era ley en el presente caso, del 6 de abril de 2018. [sic].*

> **(2)** *Erró el Honorable Tribunal de Primera Instancia al no darle validez a la prueba testifical y el informe del Contador Público Autorizado, Aquino De Cordova, el cual es vinculante en el presente caso. [sic].*

> **(3)** *Erró el Honorable Tribunal de Primera Instancia al no determinar el hecho de que al demandante aquí Apelante, se le adeuda varias cuantías establecidas, tanto en la Demanda como en la Vista en su fondo. [sic].*

> **(4)** *Erró el Honorable Tribunal al indemnizar a la parte aquí apelada, en ausencia total de prueba alguna, sobre daños, aportaciones o dinero dejado de percibir por la cantidad de $438, 092.00 [sic].*

> **(5)** *Erró el Honorable Tribunal al determinar que en el presente caso no hubo Acción Derivativa, a pesar de la Resolución de Juez Conty Pérez y las conclusiones en el Informe del Contador Público Autorizado Aquino de Cordova que le concluyen que el Sr. Armando Sanchez aportó aproximadamente el 90% del de Safety Route [sic].*

Luego de varias incidencias procesales, el **28 de febrero de 2024**, la señora González Soto presentó *Alegato de la apelada Jesenia González.*

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto.

-II-

-A-

Al revisar una determinación de un tribunal de menor jerarquía, los tribunales tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso.[80] Como regla general, los foros apelativos no debemos

---

[79] Apéndice VI de la *Apelación Civil*, pág. 35.
[80] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013).

intervenir con las determinaciones de hechos de los tribunales de primera instancia, su apreciación sobre la credibilidad de los testigos y el valor probatorio conferido a la prueba presentada en sala, pues solo contamos con *"récords mudos e inexpresivos"*.[81] Lo anterior, se fundamenta en la premisa de que el foro primario es quien tiene la oportunidad de escuchar a los testigos declarar y apreciar su *"demeanor"*.[82]

Sin embargo, la norma de deferencia antes esbozada encuentra su excepción y cede cuando la parte promovente demuestra que:

> *[h]ubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[83]

Por discreción se entiende el *"tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción"*.[84] No obstante, *"el adecuado ejercicio de la discreción está inexorable e indefectiblemente atado al concepto de la razonabilidad"*.[85] A esos efectos, el Tribunal Supremo de Puerto Rico ha enumerado situaciones que constituyen un abuso de discreción:

> *[c]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos.*[86]

En cambio, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde

---

[81] *Id.*, a las págs. 770-771.; *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009).
[82] *Colón v. Lotería*, 167 DPR 625, 659 (2006).
[83] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986); *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012).
[84] *García v. Asociación*, 165 DPR 311, 321 (2005).
[85] *Id.*
[86] *Ramírez v. Policía de PR*, 158 DPR 320, 340-341 (2002).

la dirección del proceso.[87] En ese sentido, las conclusiones de derecho son revisables en su totalidad por los tribunales apelativos.[88]

Ahora bien, la norma de deferencia antes esbozada no es de aplicación a la evaluación de la prueba pericial y documental. En lo que respecta a las conclusiones de hecho basadas en prueba pericial o documental, los foros revisores nos encontramos en igual posición que los tribunales sentenciadores para apreciarla y adoptar nuestro propio criterio.[89] Incluso, podemos descartarla, aunque sea técnicamente correcta.[90]

**-B-**

Según la normativa antes expuesta, los tribunales apelativos, de ordinario, aceptan *"como correctas las determinaciones de hechos de los tribunales de instancia, al igual que su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en sala"*.[91] A pesar de ello, en ocasiones, la deferencia al arbitrio del juzgador de los hechos no es absoluta.[92] De manera, que:

> *[a]unque alguna prueba sostenga las determinaciones de hechos del tribunal, si de un análisis de la totalidad de la evidencia este Tribunal queda convencido de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos claramente erróneas.[93]*

Por otro lado, en cuanto a las determinaciones de hecho y conclusiones de derecho, la Regla 42.2 de Procedimiento Civil apunta que: *"[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el*

---

[87] *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 434-435 (2013).
[88] *Dávila Nieves v. Meléndez Marín, supra*, pág. 770.
[89] *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).
[90] *Id.*
[91] *Dávila Nieves v. Meléndez Marín, supra*, pág. 771.
[92] *Id.*
[93] *Id.*, pág. 772.

*tribunal sentenciador para juzgar la credibilidad de las personas testigos".*[94]

Dicho de otro modo, las determinaciones de hechos basadas en la credibilidad conferida por el juzgador a los testigos que declaren ante sí merecen gran deferencia.[95] Por tanto, nuestra intervención con la evaluación de la prueba testifical procede únicamente cuando un análisis integral de la misma *"nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia".*[96] De ahí, que nuestro reglamento establece que cuando una parte señale algún error relacionado con la suficiencia de la prueba testifical o la apreciación errónea de la misma, deberá someter una transcripción, exposición estipulada o narrativa de la prueba.[97]

En cuanto a la evaluación y suficiencia de la prueba, la Regla 110 de Evidencia establece los principios que el juzgador deberá evaluar a la hora de determinar cuáles hechos quedaron establecidos.[98] En lo que nos concierne, la mencionada regla preceptúa que:

> *(A) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.*
> *(B) La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia.*
> *(C) Para establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza.*
> *(D) La evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho[.]*
> *(E) [...]*
> *(F) En los casos civiles, la decisión de la juzgadora o el juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad[.]*[99]

---

[94] Regla 42.2 de las Reglas de Procedimiento Civil de PR (2009), 32 LPRA Ap. V, R. 42.2.
[95] *SLG Rivera Carrasquillo v. AAA, supra,* pág. 356.
[96] *Rivera Menéndez v. Action Service*, 185 DPR 431, 444 (2012).
[97] Regla 19 (A) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 19 (A). Véanse, además, la Regla 19 (B), la Regla 20, la Regla 76 (A) y (E).
[98] Regla 110 de las Reglas de Evidencia de 2009, 32 LPRA, Ap. VI, R. 110.
[99] *Id.*

En otras palabras, le corresponde al tribunal determinar si la prueba desfilada es suficiente para establecer la veracidad de los hechos alegados. Así las cosas, no basta con formular meras alegaciones o teorías, pues estas no constituyen prueba.[100] Respecto al valor probatorio que les otorgarán los tribunales a los testimonios periciales, la Regla 702 de Evidencia señala que:

> *[e]l valor probatorio del testimonio dependerá, entre otros, de:*
> (A) *si el testimonio está basado en hecho o información suficiente;*
> (B) *si el testimonio es el producto de principios y métodos confiables;*
> (C) *si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso;*
> (D) *si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica;*
> (E) *las calificaciones o credenciales de la persona testigo, y*
> (F) *la parcialidad de la persona testigo.*[101]

La citada regla establece una serie de factores que inciden sobre el valor probatorio del testimonio pericial, cuyo fin último es ayudar al juzgador a entender determinada prueba o hecho en controversia.[102] De modo, que: *"el juzgador de hechos no está obligado a aceptar las conclusiones de un perito. Por lo tanto, si luego de aquilatar el testimonio pericial, el juzgador concluye que no merece credibilidad, este tiene la facultad de rechazarlo".*[103]

**-C-**

Constituye una norma reiterada que los tribunales tienen la ineludible tarea de auscultar si pueden atender y adjudicar los asuntos que se presentan para su consideración.[104] Como parte de los criterios de *justiciabilidad* está la llamada *legitimación activa* de la parte que promueve el pleito y la madurez de la controversia planteada.[105]

---

[100] *UPR v. Hernández,* 184 DPR 1001, 1013 (2012).; *Pereira Suárez v. Jta. Dir. Cond.,* 182 DPR 485, 510 (2011).
[101] 32 LPRA, Ap. VI, R. 702.
[102] E. Rivera García, *El valor del testimonio pericial en los procesos judiciales,* 47 Rev. Jur. U. Inter. P.R. 87, 99-100 (2013).
[103] *Id.,* pág. 101.
[104] *Hernández, Romero v. Pol. de PR,* 177 DPR 121, 135 (2009).
[105] *Romero Barceló v. ELA,* 169 DPR 460, 470-471 (2006).

El requisito de legitimación activa para la justiciabilidad de una controversia, o sea, para que una controversia sea susceptible de adjudicación judicial, ejerce la función primordial de asegurarle al tribunal que la parte promovente tiene un interés en la acción de tal índole, que con toda probabilidad habrá de proseguir su causa de acción vigorosamente y que consecuentemente traerá a la atención del tribunal los asuntos en controversia.[106]

Para demostrar que cumple con el requisito de legitimación activa, el promovente de una acción debe demostrar: **(1)** que ha sufrido un daño claro y palpable; **(2)** que el daño es real, inmediato y preciso, no abstracto o hipotético; **(3)** que existe una conexión entre el daño sufrido y la causa de acción ejercitada; y, **(4)** que la causa de acción surge al palio de la Constitución o de una ley.[107]

Nuestro Tribunal Supremo ha pautado ciertas guías para que los tribunales evaluemos los planteamientos sobre legitimación activa. Lo más importante es que cuando se cuestiona la legitimación de una parte para entablar un pleito o una reclamación, el juzgador debe tomar como ciertas las alegaciones del reclamante, interpretándolas desde el punto de vista más favorable a éste. De ahí, que es norma reiterada que los requisitos de legitimación activa deben interpretarse de forma flexible y liberal, ya que de lo contrario se negaría acceso a los tribunales a aquellas personas y entidades que sean adversamente afectadas por actuaciones del Estado o de personas particulares y que tienen reclamaciones que pueden ser atendidas debidamente por los tribunales.[108]

**-D-**

En nuestra jurisdicción la responsabilidad civil por actos u omisiones culposas o negligentes extracontractuales se rige por el

---

[106] *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 942-943 (2011); *Crespo v. Cintrón*, 159 DPR 290, 299 (2003).

[107] *Asoc. Fotoperiodistas v. Rivera Schatz, supra.; Crespo v. Cintrón, supra.*

[108] *Crespo v. Cintrón, supra; Asoc. de Maestros v. Secretario de Educación*, 156 DPR 754, 765 (2002).

Artículo 1802 del Código Civil de 1930.[109] Esta disposición establece que quien por acción u omisión cause daño a otro, mediando culpa o negligencia, viene obligado a reparar el daño causado.[110] El propósito de la ley es proveer a todo aquel que sufra daño un medio de resarcimiento contra aquellos que no ejercen el debido cuidado en sus actuaciones. El artículo añade que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización.[111]

En materia de responsabilidad civil extracontractual, quien por acción u omisión cause daño a otro, interviniendo cualquier género de culpa o negligencia, vendrá obligado a reparar el daño ocasionado.[112] Esta doctrina reconoce que toda acción sobre responsabilidad por daños y perjuicios procede únicamente si concurren los siguientes elementos: **(1)** una acción u omisión culposa o negligente; **(2)** la producción de un daño real; **(3)** un nexo causal entre el daño y la conducta culposa o negligente.[113]

Una vez el tribunal sentenciador determina la existencia de los daños alegados y la relación o nexo causal entre el daño y quien lo provoca, es decir, la parte demandada, procede entonces estimar a cuánto ascenderá la compensación monetaria que será adjudicada a favor de la parte perjudicada.

**-E-**

Pertinente a la controversia ante nos, se ha establecido que los directores y oficiales corporativos tienen un deber de velar por los mejores intereses de la corporación y de todos sus accionistas.[114] Sin embargo, cuando estos incumplen con dicho

---

[109] Art. 1802 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 5141. Considerando que los actos objeto de controversia surgieron durante la vigencia del anterior Código Civil de 1930, analizaremos los errores planteados a la luz de dicha legislación y su jurisprudencia interpretativa. Esto de conformidad con el Art. 1812 del Código Civil de 2020, 31 LPRA sec. 11717.
[110] *Cintrón Adorno v. Gómez*, 147 DPR 576, 598 (1999).
[111] *García v. ELA,* 163 DPR 800, 809 (2005).
[112] 31 LPRA ant. sec. 5141.
[113] *Id.*; *Nieves Díaz v. González Massas,* 178 DPR 820, 843 (2010).
[114] *Eastern Sands, Inc. v. Roig Comm. Bank*, 140 DPR 703 (1996).

deber, los accionistas pueden verse precisados a vindicar sus propios derechos, así como los de la corporación, ya sea mediante una acción derivativa o una acción directa.[115] Una ***acción derivativa*** es una reclamación judicial de una causa de acción a favor de la corporación que inician los accionistas en aquellas ocasiones en que la propia corporación, sus directores u oficiales corporativos, han fallado en reclamar los derechos de esta contra aquellas personas, externas o internas, que le han ocasionado algún daño.[116] Además, ha sido descrita como la acción presentada por un accionista para evitar o remediar daños, lesiones, incumplimientos o abusos contra la corporación. Cabe mencionar que, la acción derivativa no es para vindicar los derechos del accionista, sino los de la corporación.[117]

El Tribunal Supremo de Puerto Rico ha reconocido que la acción derivativa es contra los directores corporativos cuyas decisiones son en detrimento de los intereses de los accionistas. Por lo general, la Junta Directores decide si demanda a nombre de la corporación. No obstante, y a modo de excepción, los accionistas pueden instar una acción derivativa a nombre de la corporación y en contra de la Junta de Directores para reclamar por los daños que esos funcionarios le ocasionaron a la corporación. Como está dirigida a vindicar los derechos corporativos, cualquier recobro pertenece a la corporación.[118]

No obstante, el derecho corporativo y su jurisprudencia interpretativa han establecido ciertos requisitos que deben cumplirse cuando se pretenda entablar una acción derivativa. En

---

[115] *Rivera Sanfeliz et. al. v. Jta. Dir. FirstBank*, 193 DPR 38 (2015).

[116] *Véase*, C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, Colombia, 2016, a la pág. 418.

[117] *Multinational Ins. v. Benítez y otros*, 193 DPR 67, 79 (2015).; *Rivera Sanfeliz et al v. Jta Dir. First Bank,* 193 DPR 38, 55 (2015).

[118] *Multinational Ins. v. Benítez, supra,* a la pág. 79; *Rivera Sanfeliz et al v. Jta Dir. First Bank, supra,* a las págs. 54-55.

ese sentido, el Artículo 12.06 de la *Ley General de Corporaciones* establece que:

> *[e]n cualquier pleito entablado por un accionista a beneficio de alguna corporación organizada con arreglo a las leyes del Estado Libre Asociado, deberá alegarse en la demanda que el demandante era accionista de la corporación cuando se efectuó la transacción impugnada, o que las acciones le fueron transferidas luego de la transacción por ministerio de ley.*[119]

A tales efecto, dicho articulado exige en una petición de acción derivativa el demandante alegue específicamente su condición de accionista.[120] Por lo que, un no accionista no tiene legitimación activa para instar una acción derivativa dirigida a atender la alegada violación de los deberes fiduciarios propios de la corporación.[121] Cabe señalar que, esta acción solo procede, si el promovente era accionista cuando ocurrieron los hechos por lo que reclama o que las acciones le hayan sido transferidas posteriormente por ley.[122]

**-F-**

De otro lado, la doctrina de la ley del caso ha sido llamada la hermana gemela del *stare decisis.*[123] Esta doctrina, en su origen del *common law* fue incorporada en nuestra jurisdicción en el año de 1912 en el caso de *Calzada, et al v. De la Cruz, et al.*[124] En este caso se expuso que: *[e]s un principio de ley bien establecido que las proposiciones y cuestiones discutidas, consideradas y resueltas en la primera apelación constituyen la ley del caso y no deben ni pueden ser discutidas en la segunda apelación.*[125]

Sabido es que en nuestra jurisdicción: *"los derechos y las obligaciones adjudicados mediante un dictamen judicial, que adviene final y firme, constituyen la ley del caso".*[126] En consecuencia, las

---

[119] Artículo 12.06 de la Ley Núm. 164-2009, según enmendada, conocida como la *Ley General de Corporaciones*, 14 LPRA sec. 3786.
[120] *Id.*
[121] *Id.*
[122] *Multinational Ins. v. Benítez, supra,* a la pág. 80.
[123] Moore & Currier, *Moore's Federal Practice,* 0.404 [1], 2d ed. 1974, pág. 403.
[124] 18 DPR 491 (1912).
[125] *Noriega v. Gobernador,* 130 DPR 919 (1992).
[126] *Cacho Pérez v. Hatton Gotay y otros,* 195 DPR 1, 8 (2016); *Mgmt. Adm. Servs,*

controversias que han sido adjudicadas por un tribunal primario o apelativo, de ordinario, no pueden reexaminarse por gozar de finalidad y firmeza.[127] De esta manera, la doctrina en cuestión puede ser invocada únicamente en casos en que *"exista una decisión final de la controversia en sus méritos"*[128] y obliga, como norma general, *"tanto al tribunal de instancia como al que las dictó, si el caso vuelve ante su consideración"*.[129]

Cabe señalar, que el principio en discusión dirige la discreción de los tribunales, mas no limita su poder.[130] A esos efectos, el Tribunal Supremo de Puerto Rico ha manifestado que:

> *[m]ás que un mandato invariable o inflexible, la doctrina recoge una costumbre deseable: las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa deben usualmente respetarse como finales. De este modo, las partes en un litigio pueden, en lo posible, conducir su proceder en el pleito sobre unas directrices judiciales confiables y certeras.*[131]

Sin embargo, la *"ley del caso"* no debe ser empleada como una regla férrea ni de aplicación absoluta, pudiendo descartarse su aplicación cuando produzca resultados manifiestamente injustos o presente un atentado contra los principios básicos de la justicia.[132] No siendo este principio uno de carácter inviolable ni que imponga un límite a la autoridad judicial, permite que un segundo juez revoque una determinación equivocada de otro juez de igual nivel dentro de un mismo caso.[133] Incluso, cuando la ley del caso sea errónea y cause una gran injusticia, se puede dejar a un lado y aplicar una norma de derecho diferente.[134] En consecuencia, *"un juez de instancia no queda atado por sus determinaciones*

---

[127] *Corp. v. ELA*, 152 DPR 599, 606 (2000).
[127] *Id.*, págs. 8-9 y 606-607, respectivamente.
[128] *Cacho Pérez v. Hatton Gotay y otros, supra*, pág. 9; *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005).
[129] *Id.*
[130] *Id.*
[131] *Mgmt. Adm. Servs, Corp. v. ELA, supra*, a las págs. 607-608.
[132] *In re Fernández Díaz I*, 172 DPR 38, 44 (2007); *Félix v. Las Haciendas, supra*, pág. 844.
[133] *Mgmt. Adm. Servs, Corp. v. ELA, supra*, pág. 608.
[134] *Id.*, pág. 607.

*interlocutorias, aun cuando estas no hayan sido objeto de reconsideración o revisión".*[135]

**-III-**

De entrada, cabe señalar que el TPI no erró al reconsiderar su dictamen y emitir una *Sentencia en Reconsideración* desestimando la demanda enmendada y la petición derivativa instada por el apelante. **Veamos.**

En cuanto al **primer error**, el apelante nos señala que el TPI incidió al ignorar la *Resolución* interlocutoria emitida el 6 de abril de 2018, incluyendo sus determinaciones de hechos, ya que estas eran ley en el presente caso. Específicamente, el apelante señala que el foro primario (mediante *Resolución* del Hon. Héctor Jaime Conty) había determinado —de manera final y firme— que: *"[t]ampoco existe controversia en cuanto a que el demandante-reconvenido Sánchez Crespo aportó aproximadamente la cantidad de $764,000.00, o el 90% del capital que tiene la codemandada Safety Route Corp. [...]".*[136] Por lo cual, arguye que no hay controversia sobre la aportación realizada, ya fuera en su carácter personal o bajo CPL. Añade que, como parte de la prueba desfilada, el CPA Aquino concluyó que:

> *[D]e los documentos examinados **no pudimos determinar quién realizó dichas aportaciones de capital.** No obstante, conforme a la información analizada y las entrevistas realizadas**, a nuestro juicio, el Sr. Sánchez era quien contaba con el capital suficiente para financiar a Safety,** provenientes, principalmente, de CLP y Praderas del Mar. No encontramos información que indique que la Sra. González contaba con bienes equivalentes a la cantidad de capital en acciones comunes aportado a Safety, ascendente a $749,815. **Más aún, según Resolución y Orden emitida por el Honorable Tribunal el 6 de abril de 2018, el Sr Sánchez aportó aproximadamente el 90% del capital**.*[137]

Basado en lo antes expuesto, el apelante arguye que el foro a quo estaba obligado —o atado— a concluir que el propietario de Safety era exclusivamente el señor Sánchez Crespo. Por lo que,

---

[135] *Mgmt. Adm. Servs, Corp. v. ELA, supra*, págs. 608-609.
[136] Apéndice XVII de la *Apelación Civil*, págs. 88 – 89.
[137] Apéndice XV de la *Apelación Civil*, a las págs. 75 – 76, 83 – 84.

aduce que el TPI erró al no tomar en consideración la *Resolución* emitida el 6 de abril de 2018.

Conforme al derecho antes discutido, un juez de instancia no queda atado a determinaciones interlocutorias previas; máxime, cuando en este caso, dicha Resolución se dictó en las etapas temprana de este pleito. Es decir, apenas iniciaba el descubrimiento de prueba. En ese sentido, todavía no se había rendido el Informe de la firma de CPA contratada, que —a todas luces— determinó que la aportación a Safety la había realizado la entidad CLP en calidad de préstamo, y no, el señor Sánchez en su capacidad personal.

En el **<u>segundo error</u>**, el apelante plantea que el TPI incidió al no darle validez a la prueba testifical y al Informe del CPA Aquino. Arguye, que al ser un perito contratado por el tribunal —con la anuencia de las partes— lo expresado por éste y sus conclusiones son vinculantes tanto para las partes como para el juzgador.

De entrada, en el presente caso, la firma Aquino de Córdova, Alfaro and Co., fue contratada para realizar un informe pericial contable, por lo que no podía expresar opinión alguna de naturaleza legal. Concluida la tarea, el perito testificó sobre sus hallazgos y conclusiones del informe contable. No obstante, testificó sobre asuntos legales para los cuales no fue contratado, ni encomendado. En ese sentido, no estaba autorizado a brindar testimonio u opiniones de carácter legal. Cabe destacar, que el mismo perito aceptó no tener conocimiento legal.[138] Bajo ese palio, el juzgador descartó sus opiniones legales y le brindó el valor probatorio correspondiente al resto de la prueba desfilada.

En lo referente al **<u>tercer error</u>**, arguye el apelante que el TPI incidió al no realizar determinaciones sobre las cuantías que se le

---

[138] *Véase*, TPO; Tomo 1: Vista del 21 de noviembre de 2022, a la pág. 47, líneas 1 – 11.

adeudan. Señala que éstas quedaron establecidas, tanto en la demanda, como en la vista en su fondo.

Ciertamente, en la demanda enmendada el apelante esboza varias sumas de dinero, que alegadamente se le adeudan, específicamente indicó que:

> *9. Que Safety opera en <u>una propiedad del compareciente</u> de la cual se le <u>adeuda renta</u> al demandante por la suma de **$217,000.00**, que se considera como una aportación adicional de capital.*
> *10. Que el <u>demandante es empleado de la corporación</u> devengado <u>un salario de $4,500.00 mensuales</u> y de dicho concepto se la <u>adeudan</u> **$79,383.32**. Que de no serles compensado al demandante se deben de considerar como aportación de capital a safety.*
> *11. Que para comenzar la operación Safety los <u>equipos pertenecientes a otra corporación del demandante</u> fueron transferidos a Safety con el compromiso de que se pagaran por los mismos y nunca sucedió, incumpliendo con el contrato de compraventa de activos otorgado el 5 de marzo de 2012. El <u>valor estimado de estos equipos</u> es de **$450,000.00**. Por lo que esto es una aportación de capital adicional del demandante porque no ha sido compensada.[139]*

Sin embargo, el apelante no instó una reclamación en cobro de dinero contra las apeladas, sino que, le solicitó al TPI lo siguiente:

> *[q]ue declare **ha lugar** esta demanda, se declare como único accionista de Safety al compareciente, se ordene la consignación de todos los fondos relacionados a Safety, se le ordene a la demandada devolver todos los fondos y propiedades pertenecientes a Safety, se nombre un administrado[r] judicial o síndico para atender los asuntos de la corporación en lo que se tramita la presente causa de acción y dicte cualquier otro pronunciamiento que en derecho proceda.[140]*

De igual forma, el apelante declaró que se le adeudaban varias sumas correspondientes: a cánones de arredramiento no pagados,[141] salario no cobrado,[142] y a gastos cargados a una tarjeta de crédito personal.[143] Sin embargo, el apelante **no presentó prueba de ello**. Aún así, insiste en que, ante la falta de prueba en contrario, le correspondía al foro *a quo* concluir que se le debían las cantidades

---

[139] *Véase*, Apéndice XI de la *Apelación Civil*, a la pág. 49. *Énfasis nuestro.*
[140] *Id.*, a la pág. 50. *Énfasis en original.*
[141] *Véase*, TPO; Tomo 1: Vista del 21 de noviembre de 2022, a la pág. 271, línea 1 a la pág. 272, líneas 10.
[142] *Véase*, TPO; Tomo 1: Vista del 21 de noviembre de 2022, a la pág. 263, líneas 12 – 20; pág. 265, líneas 4 – 13.
[143] *Véase*, TPO; Tomo 1: Vista del 21 de noviembre de 2022, a la pág. 266, líneas 1 – 6.

alegadas. Dicho planteamiento carece de mérito y no nos persuade, pues sabido es que todo demandante tiene el peso de la prueba para demostrar las acciones que reclama. Ello no ocurrió aquí.

En el **cuarto error**, el apelante alega que el TPI incidió al indemnizar a la señora González Soto con la suma de $438,092.00, pese a no pasar prueba sobre daños, aportaciones o dinero dejado de percibir.

Contrario a dicha alegación, la coapelada probó los daños sufridos mediante prueba testifical y documental. Entre otras cosas, la señora González Soto expresó que, cuando estaba recopilando unos documentos para firmar el contrato que se había llevado Safety con la *Autoridad de Carreteras y Transportación* se dio cuenta que le faltaba documentación en la oficina.[144] Señaló, además, que el apelante intentó sacar su firma de la cuenta comercial.[145] Añadió las enmiendas a la corporación que intentó realizar el apelante en el *Departamento de Estado.*[146]

Además, manifestó que no pudo acceder a las oficinas desde el 11 de agosto de 2016, ya que le cambiaron el candado.[147] Indicó, que perdió el control total de la corporación, ya que cuando el TPI autorizó la entrada a la oficina (febrero, 2017), ya no estaban las computadoras con la data de la corporación ni la documentación.[148] Mediante Acta Notarial se tomó conocimiento de las condiciones de la oficina donde se operaba Safety.[149] Además, la coapelada presentó prueba documental que reflejaba los daños sufridos, a saber: el Acta

---

[144] *Véase*, TPO, Tomo 2: Vista del 22 de noviembre de 2022, a las págs. 12 lineas 21 – 22 a la pág. 13 líneas 1 – 20.

[145] *Véase*, TPO, Tomo 2: Vista del 22 de noviembre de 2022, a las págs. 15 líneas 11 – 15

[146] *Véase*, TPO, Tomo 2: Vista del 22 de noviembre de 2022, a las págs. 16 líneas 16 – 22 a la pág. 17 líneas 1 – 2.

[147] *Véase*, TPO, Tomo 2: Vista del 22 de noviembre de 2022, a las págs. 25 líneas 18 – 21 a la pág. 26 líneas 1 – 2.

[148] *Véase*, TPO, Tomo 2: Vista del 22 de noviembre de 2022, a las págs. 26 líneas 19 – 22 a la pág. 27 líneas 1 – 2.

[149] *Véase*, Anejo IV del Apéndice de la Apelada, a las págs. 112 – 123.

Notarial,[150] los estados financieros de Safety,[151] el expediente de Safety ante el Departamento de Estado,[152] entre otros documentos.

Concurrimos con el foro primario al concluir que quedaron probados los daños provocados por el señor Sánchez Crespo a la señora González Soto. En particular: **(1)** la acción fraudulenta ante el Departamento de Estado autoproclamándose como nuevo Director, Presidente y Agente Residente de la corporación utilizando una *Resolución corporativa*; **(2)** la obstaculización de acceso a las oficinas de Safety, que provocaron el cese de las operaciones de la compañía; **(3)** las actuaciones del apelante al colocar un candado y sustraer archivos y/o récords de las oficinas de Safety, lo que provocó una merma en el capital de la compañía. Como bien señala el foro primario, todas estas acciones provocadas por el señor Sánchez Crespo fueron la causa próxima a los daños sufridos de la señora González Soto al perderse la plusvalía de Safety por el cese de sus operaciones. Por lo que la cuantía establecida por el foro de instancia ($438,092.00), representa el monto que perdió la coapelada a consecuencia directa de las acciones del apelante.[153]

Por último, en el **quinto error**, el apelante aduce que el TPI se equivocó al determinar que no hubo una *Acción Derivativa* en el caso epígrafe. De manera equívoca, el apelante sostiene que él es el único accionista de Safety, y que ante las pérdidas por el incumplimiento de la señora González Soto con sus responsabilidades en Safety, procedía la acción derivativa.

Conforme al derecho antes expuesto, uno de los requisitos de la *Acción Derivativa,* es que *la persona que insta la acción debe haber*

---

[150] *Id.*

[151] *Véase,* Anejo II del Apéndice de la Apelada, a las págs. 52 – 110.

[152] *Véase,* Anejo I del Apéndice de la Apelada, a las págs. 1 – 51.

[153] En el inciso #23 de la Parte III de la *Sentencia en Reconsideración,* el foro de instancia esbozó la siguiente aplicación:

> **23.** *Según el último estado financiero de Safety del 2015; … esta tenía un capital y sobrante de $438,092.00; aún después de restarse de los activos totales el pasivo relativo a la suma de $764,574.00 adeudada a CLP […]. Véase,* Apéndice I de la *Apelación Civil,* págs. 19.

*sido* **accionista** *al momento en que ocurrió el daño que reclama, y durante todo el procedimiento*, lo cual no ocurre en el presente caso, ya que el señor Sánchez Crespo no figura como accionista de Safety en ningún documento del expediente ante nuestra consideración. De la prueba sometida ante nos, quien único surge como accionista de Safety con el 100% de las acciones es la señora González Soto. Por lo cual, el TPI actuó correctamente al desestimar la acción derivativa, ya que el apelante carecía de legitimación activa.

En conclusión, los escuetos argumentos del apelante no nos mueven a cambiar el dictamen apelado. Ante la ausencia de error, pasión, prejuicio o parcialidad procede confirmar la *Sentencia en Reconsideración* apelada.

**-IV-**

Por los fundamentos antes expuestos, resolvemos **confirmar** la *Sentencia en Reconsideración* apelada.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones